[No. A079840. First Dist., Div. Four. Oct. 30, 1998.]

EMPIRE WASTE MANAGEMENT, Plaintiff and Appellant, v.
TOWN OF WINDSOR, Defendant and Respondent.

## COUNSEL

Crosby, Heafey, Roach & May, John E. Carne, Ezra Hendon and John Lynn Smith for Plaintiff and Appellant.

Steven R. Meyers, Town Attorney, Elizabeth H. Silver, Assistant Town Attorney, Meyers, Nave, Riback, Silver & Wilson and Andrea J. Saltzman for Defendant and Respondent.

## OPINION

**POCHÉ, J.**—A provision of the Integrated Waste Management Act (Pub. Resources Code, § 40000 et seq.) (the Act) gives "the governing body of the

local governmental agency" the authority to grant an exclusive franchise for "solid waste handling services." The issue presented here is whether this provision abrogates local citizens' right to vote on whether to repeal a long-term extension of the franchise granted by their municipal council. We hold the electors' referendum powers are not curtailed by the statute.

## BACKGROUND

In 1993 the town council for the Town of Windsor granted Empire Waste Management a four-year exclusive franchise to collect garbage. In May of 1996 the parties amended their agreement to extend the term of the franchise for 10 years, through the year 2006. When the extension was submitted for the voters' approval at a referendum held in November of that year, it was defeated.

Empire responded with a petition for declaratory relief and a writ of either mandate or prohibition. Empire's position was that the Act vested sole authority concerning the franchise in the town council, which meant that the referendum was "null and void and of no force and effect." The trial court concluded that Empire "has failed to show that the Legislature in enacting . . . [the Act] . . . intended to delegate decision making authority exclusively to the Windsor Town Council." Empire's timely appeal from the judgment denying its petition brings the controversy before this court.

## REVIEW

The referendum is the means by which the electorate is entitled, as a power reserved by it under our state Constitution, to approve or reject measures passed by a legislative body. (Cal. Const., art. II, §§ 9, subd. (a), 11 & art. IV, § 1; *Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 591 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038].) The scope of the referendum power is generally treated as coextensive with the scope of legislative authority—any legislative decision made by a representative body is subject to referendum.[1] (*DeVita* v. *County of Napa* (1995) 9 Cal.4th 763, 775 [38 Cal.Rptr.2d 699, 889 P.2d 1019].)

---

[1]There are specified subjects that are constitutionally and statutorily exempted from the scope of state or local referenda. (See Cal. Const., art. II, § 9, subd. (a); Elec. Code, § 9247.) Not one of these subjects is implicated here.

A referendum may review only *legislative* decisions, but not matters that are strictly executive or administrative. (E.g., *Wheelright* v. *County of Marin* (1970) 2 Cal.3d 448, 457 [85 Cal.Rptr. 809, 467 P.2d 537].) It has long been established in California that the granting of a franchise is a legislative act. (E.g., *Pacific Rock etc. Co.* v. *City of Upland* (1967) 67 Cal.2d 666, 668 [63 Cal.Rptr. 572, 433 P.2d 476] and decisions cited.) Although the point

Because initiatives and referenda are vehicles for exercising that power reserved to the citizens, courts have traditionally been reluctant to find a limitation upon the availability of such electoral powers. (*Voters for Responsible Retirement* v. *Board of Supervisors* (1994) 8 Cal.4th 765, 776-777 [35 Cal.Rptr.2d 814, 884 P.2d 645].) Such reluctance has been described either as a judicial policy of liberally construing the power of initiative and referendum or as a presumption in favor of the power absent a clear showing of legislative intent to the contrary. (*Ibid.*)

■ As described in *DeVita* v. *County of Napa, supra,* 9 Cal.4th at page 776 there are two instances in which the power of referendum will be found to have been withdrawn: first, when there is a "definite indication" by the Legislature that it intends to preempt the discretion of a local legislative body to legislate; second, when the Legislature rather than preempt local legislative action has instead sought to delegate legislative power so exclusively to a local governing body as to indicate its intent to preclude the citizens' otherwise coextensive right of referendum. (*Ibid.*)

■ The presumption that the people retain the power of referendum is overcome only by a "clear showing of legislative intent" to make an exclusive grant to the local governing entity. Because legislative intent is measured against the plain meaning of statutory language, we look to the language of the relevant statute. The inquiry focuses quite precisely on the language used: a statute delegating authority to a local "governing body" or "legislative body" supports a weak inference of exclusive delegation while use of more specific terms such as board of supervisors or city council supports a stronger inference of exclusive delegation. (*Committee of Seven Thousand* v. *Superior Court* (1988) 45 Cal.3d 491, 501 [247 Cal.Rptr. 362, 754 P.2d 708].)

Where generic language such as "legislative body" is used in the statute the inquiry then turns to whether and to what extent the statute deals with an issue of statewide concern rather than a purely local one. (*Committee of Seven Thousand* v. *Superior Court, supra,* 45 Cal.3d 491, 501.) The mere

---

appears never to have been decided in this state, it is widely accepted that extending a franchise is likewise a legislative decision. (See 12 McQuillin, The Law of Municipal Corporations (3d ed. 1995) § 34.52, p. 175; *Golden State Transit Corp.* v. *City of Los Angeles* (9th Cir. 1985) 754 F.2d 830, 834 [anticipating California law on this point].) This would be a logical application of the principle that "The amendment of a legislative act is itself a legislative act. The power to legislate includes by necessary implication the power to amend existing legislation." (*Johnston* v. *City of Claremont* (1958) 49 Cal.2d 826, 835 [323 P.2d 71].) Empire has never contended that the extension of its franchise was other than a legislative act.

presence of statewide concerns will not be sufficient, however, to establish restriction of the power of referendum. (*DeVita* v. *County of Napa, supra,* 9 Cal.4th 763, 780-781.) Our task is to look at "the nature of the state's regulatory interests to determine if they are fundamentally incompatible with the exercise of the right of . . . referendum." (*Id.* at p. 781.)

Lastly, we look to any other indicia of legislative intent to preclude the availability of the power of initiative or referendum. (*Committee of Seven Thousand* v. *Superior Court, supra,* 45 Cal.3d 491, 507-509.) In sum, however, our Supreme Court has made clear that a mechanical consideration of these factors must yield in favor of finding against preclusion of the power of referendum " ' " '[i]f doubts can [be] reasonably resolved' " ' " that preclusion was not the Legislature's intent. (*DeVita* v. *County of Napa, supra,* 9 Cal.4th 763, 777.)

■   Empire contends that an intent to preclude referenda can be found in the Act, specifically in Public Resources Code section 40059,[2] which in its entirety provides:

"(a) Notwithstanding any other provision of law, each county, city, district, or other local governmental agency may determine all of the following:

"(1) Aspects of solid waste handling which are of local concern, including, but not limited to, frequency of collection, means of collection and transportation, level of services, charges and fees, and nature, location, and extent of providing solid waste handling services.

"(2) Whether the services are to be provided by means of nonexclusive franchise, contract, license, permit, or otherwise, either with or without competitive bidding, or if, in the opinion of *its governing body*, the public health, safety, and well-being so require, by partially exclusive or wholly exclusive franchise, contract, license, permit, or otherwise, either with or without competitive bidding. The authority to provide solid waste handling services may be granted under terms and conditions prescribed by *the governing body* of the local governmental agency by resolution or ordinance.

"(b) Nothing in this division modifies or abrogates in any manner either of the following:

"(1) Any franchise previously granted or extended by any county or other local governmental agency.

---

[2]Subsequent statutory references are to this code unless otherwise indicated.

"(2) Any contract, license, or any permit to collect solid waste previously granted or extended by a city, county, or a city and county." (Italics added.)

Empire argues that the two references to the "governing body" in section 40059, subdivision (a)(2), which grants the authority to enter into exclusive franchises, evidence the Legislature's intent to make the power of the "governing body" in this field exclusive.

### Express Statutory References to Local Legislative Bodies

At first glance, Empire might seem to draw some support from the express language of section 40059, which makes reference to local legislative bodies. However, these references support only a weak inference that the Legislature intended to shut off local voters' power of referendum. This is so because language used here is generic rather than specific. (*Committee of Seven Thousand* v. *Superior Court, supra,* 45 Cal.3d 491, 501.)

The section speaks of "governing body" or "governing body of the local government agency." The Act defines "local governing body" as "the legislative body of the city, county, or special district which has authority to provide solid waste handling services." (§ 40150.) This is quintessentially generic language. More than a dozen statutory definitions in other codes— some broad, some very specific—confirm that "governing body" has far from a fixed meaning.[3] We therefore conclude that "governing body" and "governing body of the local government agency" as used in section 40059

---

[3]Code of Civil Procedure section 1245.210 (omnibus list of state and local boards, commissions, and authorities with eminent domain powers); Elections Code section 10500, subdivision (b)(8) ("the board of directors of a district or agency or the board or body which governs the activities of the district or agency"); Government Code section 5402 ("the board of supervisors, city council, board of directors or other legislative or governing body"); Government Code section 5602 ("a board of supervisors, city council, board of directors or other legislative or governing body"); Government Code section 5751, subdivision (b) ("the board, authority, trustees, director, commission, committee, secretary, or other policy making body that exercises authority over a state agency"); Government Code section 6543 ("the board or commission provided for by a joint powers agreement"); Government Code section 7072, subdivision (e) ("a county board of supervisors or a city council, as appropriate"); Government Code section 7107, subdivision (g) ("a city, county, city and county, joint powers agency, council, or board, as appropriate"); Government Code section 8557, subdivision (d) ("the legislative body, trustees, or directors of a political subdivision"); Government Code section 66905.7 ("the governing board of the California Tahoe Conservancy"); Government Code section 67023 ("the governing board of the Tahoe Regional Planning Agency"); Government Code section 91504, subdivision (k) ("the board of supervisors, or city council, or board of directors of a redevelopment agency, as the case may be"); Health and Safety Code section 4602.2 ("the city council or other legislative body of the city"); Health and Safety Code section 4952 ("the governing body of the [sanitation] district"); Health and Safety Code section 7021 ("the board of directors, board of trustees or other governing body

are generically nonspecific and therefore support only a very weak inference that the Legislature meant to obliterate local electorates' referendum powers.

## Statewide or Local Concern

Whether the subject involved here is a matter of statewide or merely local concern may depend on how the inquiry is framed. If the question is whether the issue of solid waste management concerns everyone from New Pine Creek to Felicity, the answer is obviously yes. The Act declares that it was enacted in response to an urgent need for a comprehensive and integrated approach to waste-related issues. (§§ 40000, 40002, 40052.) On the other hand, if the question is whether the garbage of the Town of Windsor is handled by an exclusive franchisee that wants to continue doing so for a decade, the issue looks distinctly local.

This general issue of garbage franchises has been here before. Four years ago we considered whether the Act allowed continuation of a long-standing exclusive franchise to collect garbage established by municipal ordinance. In the course of concluding that the Act did not abrogate the existing franchise, we examined the scope of the Act in detail and concluded that by passing the Act the Legislature had neither expressly nor impliedly preempted the field. (*Waste Resource Technologies* v. *Department of Public Health* (1994) 23 Cal.App.4th 299, 309 [28 Cal.Rptr.2d 422].)

Little needs to be added to our previous analysis. It is hardly likely that the same Legislature which passed the Act with no intent to displace "traditional local power in this area" meant at the same time to disable local voters' power on that same subject. There is nothing in the record which hints at any regional effect or statewide impact if Windsor's garbage is

of a cemetery association"); Health and Safety Code section 34507 ("the council, board of supervisors, board of trustees, or other body having charge of the fiscal affairs of the state public body"); Health and Safety Code section 124030, subdivision (d) ("the county board of supervisors or boards of supervisors in the case of counties acting jointly"); Military and Veterans Code section 1260, subdivision (b) ("the board of supervisors in the case of a county, or the city council or board of trustees or other governing board in the case of a city, district, or other local governmental agency"); Streets and Highways Code section 19007 ("the board of supervisors of the county acting as the ex officio governing body of the lighting district"); Welfare and Institutions Code section 5601, subdivision (a) ("the county board of supervisors or boards of supervisors in the case of counties acting jointly; and in the case of a city, the city council or city councils acting jointly"). A number of statutes define governing body as "the city council in the case of a city or the board of supervisors in the case of a county." (Gov. Code, § 52006; Health & Saf. Code, §§ 34205, 36053, 37854.) Two other provisions in the Public Resources Code define "governing body" as "the board of directors of a recreation and park district" (§ 5780.2) and "governing body of a city" as "the city council, or other city board or agency having jurisdiction by charter or law" (§ 7058.5).

collected by Empire pursuant to a four-year instead of a ten-year contract. (See *Committee of Seven Thousand* v. *Superior Court, supra,* 45 Cal.3d 491, 505-506.) As shown from our previous discussion of the Act, the statewide regulatory scheme it imposes makes ample allowance for local variation and is not so pervasive that it makes all smaller governmental subdivisions mere administrative appendages of the state. (*Id.* at pp. 511-512.)

Subdivision (a)(1) of section 40059 gives examples of things the Legislature regarded as local concerns. If "frequency of collection, means of collection and transportation, level of services, charges and fees, and nature, location, and extent of providing solid waste handling services" are local, the same would appear to be true for choosing who shall provide solid waste handling services and for how long. So long as the garbage is collected, the Legislature has manifested its intent to leave the details to the people of Windsor.

### Other Indications of Legislative Intent

The third and final factor also weighs against Empire. The Act requires every city and county to prepare an integrated waste management plan. Each plan is to have a number of "elements" addressing a number of mandated topics, such as hazardous waste, recycling, and reducing the amount of solid waste generated. (See §§ 40900, 41000, 41300, 41500, 41700, 41730, 41750, 41780.) This format is very similar to the one used in city and county general plans (see Gov. Code, §§ 65300-65302), which *are* subject to referendum. (See *DeVita* v. *County of Napa, supra,* 9 Cal.4th 763, 774-775 and decisions cited.) The Act further states that during the formulation of a waste management plan ". . . it is the policy of the state and the intent of the Legislature that . . . the public be granted the opportunity to respond to clearly defined alternative objectives, policies, and actions." (§ 40900, subd. (c).) It is difficult to read this section and not see how the referendum provided the people of the Town of Windsor "the opportunity to respond to clearly defined alternative objectives" of approving or disapproving the extension of Empire's exclusive franchise. The Act requires that provision be made for solid waste handling, but it allows the "local agency" to provide the services, or get another "local agency" or "solid waste enterprise" to provide them. (§ 40058.) It seems peculiar that, according to Empire's construction of section 40059, the first two of these alternatives are subject to a referendum but the third is not.

Empire tries to argue that allowing the citizens of Windsor to express their opinion on the franchise extension adversely effects realization of state goals and essential governmental functions, grounds on which local referendum

power can be disallowed. (See *DeVita* v. *County of Napa, supra,* 9 Cal.4th 763, 781; *Committee of Seven Thousand* v. *Superior Court, supra,* 45 Cal.3d 491, 509.) Empire argues that "if the referendum is allowed in this case, the next contract could also fail to achieve voter support, and the next, and so on until there is no garbage collection." That is a problem for another day.

The people's right to legislate on their own behalf is to be denied only in instances where there is a "definite indication" or a "clear showing" that such is the Legislature's aim. (*DeVita* v. *County of Napa, supra,* 9 Cal.4th 763, 775-776; *Voters for Responsible Retirement* v. *Board of Supervisors, supra,* 8 Cal.4th 765, 777.) The language of section 40059 supports at best only a weak inference that the Legislature intended to deny local electorates their constitutional right to express their opinion on how and by whom their town's garbage is collected. This inference is rebutted by the fact that garbage collection has traditionally been regarded as a matter of local concern. Who collects the garbage of Windsor, and for how long, are not issues of statewide concern. Any inference to the contrary can be reasonably resolved to find that the Legislature did not intend to abrogate the local electorate's right of referendum on how long a solid waste handling franchise may be.

In light of these conclusions, we hold that section 40059 did not deprive the people of Windsor of their power to conduct a referendum on whether they supported the town council's decision to grant Empire a long-term extension of its exclusive franchise to collect the town's trash.[4] The trial court was thus correct in ruling that the voters' decision had to be respected.

The judgment is affirmed.

Hanlon, P. J., and McGuiness, J., concurred.

A petition for a rehearing was denied November 24, 1998, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied January 27, 1999. Mosk, J., was of the opinion that the petition should be granted.

---

[4]Empire points to *City of Dublin* v. *County of Alameda* (1993) 14 Cal.App.4th 264, 279-280 [17 Cal.Rptr.2d 845], where Division One of this court construed section 40059 to "suggest[] that the Legislature intended to preclude action by the electorate . . . ." Empire sees this as a holding we should accept. It is hard to see how a "suggestion" in a case that did not involve exclusive franchises should be treated either as a holding or as otherwise binding in a situation that does involve exclusive franchises. Moreover, there have been subsequent decisions, particularly our own in *Waste Resources Technologies* v. *Department of Public Health, supra,* 23 Cal.App.4th 299, that were not considered in *City of Dublin,* but which have figured in our analysis. Finally, we must respectfully prefer the conclusion from our own analysis.