[No. A101076. First Dist., Div. Five. Sept. 3, 2003.]

SUZANNE N. LINDELLI et al., Plaintiffs and Appellants, v.
TOWN OF SAN ANSELMO et al., Defendants and Respondents;
MARIN SANITARY SERVICE, Real Party in Interest and Respondent.

1100

## COUNSEL

Remcho, Johansen & Purcell, Robin B. Johansen and Thomas A. Willis for Plaintiffs and Appellants

Law Offices of Hadden Roth, Hadden Roth; Ragghianti Freitas Macias & Wallace, Gary T. Ragghianti; Bien & Summers and Elliot L. Bien for Defendant and Respondent Town of San Anselmo and Real Party in Interest and Respondent.

No appearance for Defendant and Respondent Town Council of the Town of San Anselmo.

## OPINION

**GEMELLO, J.—** ■ Elections Code section 9241 provides that when an ordinance is the subject of a referendum petition, it shall not take effect until the majority of the voters voting on the referendum approve the ordinance. A municipality may not evade this stay provision by re-passing a materially identical ordinance as an interim measure until the referendum election.

In this case, respondent Town of San Anselmo awarded a waste management franchise to a new provider, respondent Marin Sanitary Service, in place

of the incumbent, appellant North Bay Corporation. After opponents of the new provider obtained enough signatures to qualify a referendum on the franchise, San Anselmo accepted bids for an interim contract and then awarded Marin Sanitary Service the yearlong interim contract until the referendum election. Because this procedure violated the stay provisions of Elections Code section 9241, we reverse the trial court judgment denying a petition for a writ of mandate.

### FACTUAL AND PROCEDURAL BACKGROUND

From 1994 to 2002, San Anselmo Refuse & Recycling, an affiliate of North Bay Corporation (collectively North Bay), provided waste management services for San Anselmo. The North Bay franchise was to expire on November 30, 2002. On August 27, 2002, San Anselmo passed a resolution awarding the new waste management franchise to a competitor, Marin Sanitary Service.

Appellant Suzanne N. Lindelli (Lindelli) and others obtained enough signatures to qualify a referendum petition protesting the award of the franchise to Marin Sanitary Service.[1] The petition was certified as sufficient on September 26, 2002. On September 28, San Anselmo published a notice seeking interim contract proposals for the period from expiration of the existing franchise agreement until a referendum election could be held. The proposals were due by noon on October 8, and were to be considered at a public hearing the evening of October 8. North Bay, Marin Sanitary Service, and a third party submitted bids. On October 8, San Anselmo awarded an interim contract to Marin Sanitary Service under the identical terms and conditions as the original franchise agreement.[2] It also set the vote on the referendum petition for the next permissible general election, November 4, 2003.[3]

On October 9, 2002, North Bay and Lindelli filed a written protest. They argued that the interim contract violated the stay provisions of Elections Code section 9241.[4] After receiving no response, they filed a petition for writ of mandate on October 15. On November 20, the trial court orally denied relief, and on November 27, it entered judgment for San Anselmo and Marin Sanitary Service.

---

[1] Approximately one out of every six San Anselmo voters signed the referendum petition, above the 10 percent required by statute. (Elec. Code, § 9237.)

[2] Plaintiffs have requested that we take judicial notice of the interim contract entered into by San Anselmo and Marin Sanitary Service. We grant the request. (Evid. Code, § 459.)

[3] Elections Code section 9241 requires that a referendum election be held at least 88 days after the order setting the election.

[4] Unless otherwise indicated, all further statutory references are to the Elections Code.

That same day, before the interim contract took effect, Lindelli and North Bay sought a writ of mandate and stay from this court to stop the interim contract from going into effect. We denied their petition.

In January 2003, Lindelli and North Bay filed their opening brief. They withdrew their request to have Marin Sanitary Service removed as interim provider. Instead, they confined themselves to a request for a ruling that the issuance of the interim contract to Marin Sanitary Service was unlawful.

San Anselmo then moved to dismiss the appeal as moot. We denied the motion. Lindelli and North Bay's concession that they are no longer seeking removal of the interim provider ordinarily might render this case moot. However, there is an exception to mootness applicable to issues of broad public interest: " ' "[I]f a pending case poses an issue of broad public interest that is likely to recur, the court may exercise an inherent discretion to resolve that issue even though an event occurring during its pendency would normally render the matter moot." ' " (*Edelstein v. City and County of San Francisco* (2002) 29 Cal.4th 164, 172 [126 Cal.Rptr.2d 727, 56 P.3d 1029], quoting *In re William M.* (1970) 3 Cal.3d 16, 23 [89 Cal.Rptr. 33, 473 P.2d 737].) The election law issue presented in this case is one of broad importance, capable of recurring, and likely otherwise to escape review. We therefore exercise our discretion to consider the appeal on the merits.

### DISCUSSION

### I. *Standard of Review*

"On appeal following a trial court's decision on a petition for a writ of mandate, the reviewing court ' "need only review the record to determine whether the trial court's findings are supported by substantial evidence." ' [Citation.] However, we review questions of law independently. [Citation.] Where, as here, the facts are undisputed and the issue involves statutory interpretation, we exercise our independent judgment and review the matter de novo. [Citation.]" (*Alliance for a Better Downtown Millbrae v. Wade* (2003) 108 Cal.App.4th 123, 129 [133 Cal.Rptr.2d 249]; see *International Federation of Professional & Technical Engineers v. City and County of San Francisco* (1999) 76 Cal.App.4th 213, 224 [90 Cal.Rptr.2d 186].)

The trial court's determination that San Anselmo's actions did not violate the Elections Code is a legal finding subject to independent review. "We are not bound by the trial court's stated reasons, if any, supporting its ruling; we review the ruling, not its rationale." (*Stratton v. First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083 [258 Cal.Rptr. 721].)

II. *Lindelli and North Bay Have Exhausted Their Administrative Remedies and Have Standing to Enforce Section 9241's Requirements*

Preliminarily, San Anselmo argues that Lindelli and North Bay may not challenge the interim contract because they failed to challenge the contract before it was awarded.

The October 8, 2002, hearing on the interim contract included a public comment period. The hearing notice provided in part: "If any of these matters above are challenged in court, you may be limited to raising only those issues you or someone else raised at any public hearing described on this agenda, or in written correspondence delivered at, or prior to, this Council meeting." No one raised section 9241 at the public hearing. At the close of the hearing, San Anselmo awarded an interim contract to Marin Sanitary Service. The next day, counsel for Lindelli and North Bay wrote San Anselmo to object to the interim contract. In the letter, appellants' counsel asserted on their behalf that the interim contract was illegal under section 9241.

San Anselmo argues that because North Bay and Lindelli did not raise section 9241 at the public hearing, before the award of the interim contract, they may not do so now. San Anselmo frames this objection as either (1) a failure to exhaust administrative remedies or (2) a lack of standing. It matters not whether San Anselmo's argument is couched as a standing argument or an exhaustion argument. Under either guise, we find the objection unavailing because neither doctrine applies to bar relief here.

█ The purpose of an exhaustion requirement is twofold: to eliminate the need for judicial resolution of some disputes, and to provide a clearer record for those matters not resolved in the administrative process. (*J. H. McKnight Ranch, Inc. v. Franchise Tax Board* (2003) 110 Cal.App.4th 978, 992 [2 Cal.Rptr.3d 339]; see *Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465, 476 [131 Cal.Rptr. 90, 551 P.2d 410].) It necessarily follows that the exhaustion doctrine cannot be invoked without an existing administrative procedure that might serve these dispute resolution and record-building functions. "[T]he doctrine [requiring exhaustion of administrative remedies] does not apply in those situations where no specific administrative remedies are available to the plaintiff." (*City of Coachella v. Riverside County Airport Land Use Com.* (1989) 210 Cal.App.3d 1277, 1287 [258 Cal.Rptr. 795] (*City of Coachella*).)

There was no such remedy available here. █ The opportunity to participate in a public hearing prior to a legislative action does not constitute an administrative remedy subject to exhaustion. " 'Ordinarily we use the

word remedy as meaning a device to redress a wrong. It is decidedly inappropriate to speak of remedying a wrong that has not occurred and may not occur. Prior to the adoption of a negative declaration under the scheme here in issue there is no wrong to be remediated. Hence, the mere public opportunity to participate in an administrative proceeding prior to the adoption of a negative declaration is not a remedy. The exhaustion of administrative remedies doctrine has never applied where there is no available administrative remedy. [Citations.]' " (*Tahoe Vista Concerned Citizens v. County of Placer* (2000) 81 Cal.App.4th 577, 590 [96 Cal.Rptr.2d 880] (*Tahoe Vista*), quoting *California Aviation Council v. County of Amador* (1988) 200 Cal.App.3d 337, 348 [246 Cal.Rptr. 110] (conc. opn. of Blease, J.).) "The mere fact that [plaintiff] was entitled to attend [defendant's] hearings on the adoption of the [land use plan] and submit materials relevant to that legislative act does not constitute an administrative remedy. An administrative remedy is provided only in those instances where the administrative body is required to actually accept, evaluate and resolve disputes or complaints. [Citation.] The public hearings held by the [defendant] with regard to the adoption of the [land use plan] did not require that the [defendant] do anything in response to submissions or testimony received by it incident to those hearings." (*City of Coachella, supra,* 210 Cal.App.3d at p. 1287; see also *Rosenfield v. Malcolm* (1967) 65 Cal.2d 559, 566–568 [55 Cal.Rptr. 505, 421 P.2d 697].)

So it is here. Lindelli and North Bay were afforded the opportunity to participate in a public hearing *before* any action was taken by the city council. The city council was not required to do anything in response to their participation. That opportunity cannot constitute a "remedy" through which the subsequent approval of the interim contract could be contested. There was no failure to exhaust an available administrative remedy.[5]

We reach the same conclusion when the objection is framed as one of standing. (See *Tahoe Vista, supra,* 81 Cal.App.4th at p. 590 [explaining that statutory requirement that party raise issue in administrative California Environmental Quality Act hearings is really standing requirement, not exhaustion requirement].) We agree that only parties with standing may pursue a mandamus

---

[5] We note that Lindelli did avail herself of the one postaction procedure created by San Anselmo. San Anselmo Town Code section 1-4.01 provides in relevant part: "Except as otherwise provided in this Code or in State law, any person taking exception to any administrative determination or interpretation made by an official of the Town pursuant to any of the provisions of this Code or State law, may appeal said decision by filing with the Town Clerk a written appeal, setting forth the specific grounds thereof." We need not decide whether Town Code section 1-4.01 creates an administrative remedy for challenging the award of an interim contract because, even if it does, it was exhausted here. Plaintiffs' counsel wrote San Anselmo on October 9, 2002, the day after the interim contract was awarded, and protested the contract on the ground that it violated section 9241. San Anselmo never replied.

action. A writ of mandate "must be issued upon the verified petition of the party beneficially interested." (Code Civ. Proc., § 1086.) "This provision has been held to establish a standing requirement—the writ will issue only at the request of one who is beneficially interested in the subject matter of the action. [Citation.]" (*Waste Management of Alameda County, Inc. v. County of Alameda* (2000) 79 Cal.App.4th 1223, 1232 [94 Cal.Rptr.2d 740] (*Waste Management*).)

However, that standing requirement has been satisfied here. Lindelli has standing as a taxpayer. Under Code of Civil Procedure section 526a, "An action to obtain a judgment, restraining and preventing any illegal expenditure of .... the estate, funds, or other property of a ... city ... may be maintained ... by a citizen resident therein ... who is assessed for and is liable to pay or, ... has paid, a tax therein." Our Supreme Court has explained that the purpose of this statute is to " 'enable a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement.' " (*Blair v. Pitchess* (1971) 5 Cal.3d 258, 267–268 [96 Cal.Rptr. 42, 486 P.2d 1242], quoting Comment, *Taxpayers' Suits: A Survey and Summary* (1960) 69 Yale L.J. 895, 904.) The court also made clear that Code of Civil Procedure section 526a must be construed "liberally to achieve this remedial purpose." (5 Cal.3d at p. 268.) Lindelli, a taxpayer, has standing to contest what she contends is an illegal expenditure of municipal funds—payments to Marin Sanitary Service in violation of Elections Code section 9241.

North Bay, a company that bid for and lost out on the interim contract, has standing as a party beneficially interested in the award of the interim contract. To demonstrate a beneficial interest sufficient to pursue a mandamus action, a party must show a direct and substantial interest that falls within the zone of interests to be protected by the legal duty asserted. (*Waste Management, supra,* 79 Cal.App.4th at pp. 1233–1234; *Parker v. Bowron* (1953) 40 Cal.2d 344, 351 [254 P.2d 6].) The "direct and substantial interest" prong is easily met; by virtue of San Anselmo's decision to award an interim contract to Marin Sanitary Service, North Bay lost the opportunity to continue to serve San Anselmo's residents. The "zone of interest" prong is also satisfied. Section 9241 is intended to protect the right of the people to exercise legislative power by preserving the status quo until a referendum can be held. North Bay's interest is in preserving the status quo—continuing to provide service, as it had before. While North Bay's motivation may be commercial, its interest falls within the zone of interests protected by section 9241, and it has a direct interest in seeing section 9241 enforced. (*Burrtec Waste Industries, Inc. v. City of Colton* (2002) 97 Cal.App.4th 1133, 1138–1139 [119 Cal.Rptr.2d 410].)

San Anselmo relies on *Tahoe Vista, supra,* 81 Cal.App.4th 577 and *Endangered Habitats League, Inc. v. State Water Resources Control Bd.* (1997) 63 Cal.App.4th 227 [73 Cal.Rptr.2d 388] (*Endangered Habitats League*) in support of its argument, but neither case is helpful. Both are California Environmental Quality Act (CEQA) cases, and both recognize that the Legislature has adopted special standing/exhaustion requirements for CEQA cases. (*Tahoe Vista,* at pp. 588–591; *Endangered Habitats League,* at pp. 237–238; Pub. Resources Code, § 21177, subd. (a).[6]) Because this is not a CEQA action, the Public Resources Code section 21177, subdivision (a) requirement that a party raise any noncompliance with CEQA during the public comment period for a project subject to CEQA does not apply.

San Anselmo argues that Government Code section 54954.3, a provision of the Meyers-Milias-Brown Act, California's sunshine act, creates a comparable statutory standing requirement that must be fulfilled before challenging a municipality's compliance with Elections Code section 9241. Government Code section 54954.3 provides in part, "Every agenda for regular [public agency] meetings shall provide an opportunity for members of the public to directly address the legislative body on any item of interest to the public, before or during the legislative body's consideration of the item ...." This is an open government provision that preserves the public's right to input on matters of public importance. While Government Code section 54954.3 *permits* members of the public to provide input, it does not *mandate* that they do so. Nothing in the plain language of Government Code section 54954.3 supports San Anselmo's proposed construction—that members of the public must raise a given legal concern about a potential action before any course of action has been adopted, or be forever barred from raising that concern in court. We reject that construction.

We turn to the merits of the appeal.

### III. *Section 9241 Prohibits an Award of an Interim Contract to Marin Sanitary Service*

"The referendum is the means by which the electorate is entitled, as a power reserved by it under our state Constitution, to approve or reject measures passed by a legislative body. [Citations.]" (*Empire Waste Management v. Town of Windsor* (1998) 67 Cal.App.4th 714, 717 [79 Cal.Rptr.2d 262].) "It is the duty of the courts to jealously guard this right of

---

[6] Public Resources Code section 21177, subdivision (a) provides: "No action or proceeding may be brought pursuant to [Public Resources Code section] 21167 unless the alleged grounds for noncompliance with this division were presented to the public agency orally or in writing by any person during the public comment period provided by this division or prior to the close of the public hearing on the project before the issuance of the notice of determination."

the people and to prevent any action which would improperly annul that right." (*Martin v. Smith* (1959) 176 Cal.App.2d 115, 117 [1 Cal.Rptr. 307] (*Martin I*).) Consequently, " '[I]t has long been our judicial policy to apply a liberal construction to this power wherever it is challenged .... If doubts can reasonably be resolved in favor of the use of this reserve power, courts will preserve it.' " (*Associated Home Builders etc., Inc. v. City of Livermore* (1976) 18 Cal.3d 582, 591 [135 Cal.Rptr. 41, 557 P.2d 473], quoting *Mervynne v. Acker* (1961) 189 Cal.App.2d 558, 563–564 [11 Cal.Rptr. 340].)

■ An essential component of the referendum power is the ability to stay legislation until voters have had the opportunity to approve or reject it. With limited exceptions, every municipal ordinance is subject to an automatic 30-day stay before it becomes effective. (§ 9235.) During that period, any qualified registered voter may circulate a referendum petition challenging the ordinance. (§ 9237.) Provided that the requisite number of signatures is obtained, "the effective date of the ordinance shall be suspended, and the legislative body shall reconsider the ordinance." (*Ibid.*)

■ A legislative body reconsidering an ordinance has two options: it may repeal the ordinance, or it may submit the ordinance to a public vote. "If the legislative body does not entirely repeal the ordinance against which [a referendum] petition is filed, the legislative body shall submit the ordinance to the voters, either at the next regular municipal election occurring not less than 88 days after the order of the legislative body, or at a special election called for the purpose, not less than 88 days after the order of the legislative body." (§ 9241.) The decision to put the ordinance to a vote continues the stay in effect: "The ordinance shall not become effective until a majority of the voters voting on the ordinance vote in favor of it. If the legislative body repeals the ordinance or submits the ordinance to the voters, and a majority of the voters voting on the ordinance do not vote in favor of it, the ordinance shall not again be enacted by the legislative body for a period of one year after the date of its repeal by the legislative body or disapproval by the voters." (*Ibid.*; see also Cal. Const., art. II, § 10(a) [parallel stay provision for statewide referendum power].)

San Anselmo contends that by its terms, the stay provision should be read to apply only to the original five-year franchise resolution. This interpretation takes an overly narrow view of the role of the referendum stay provision. The function of the stay provision is to enforce the electorate's power to approve or reject measures provisionally adopted by a legislative body *before* they take effect. If the stay provision were interpreted to apply only to the specific measure challenged by referendum, the referendum power could be "completely nullified." (*Martin I, supra,* 176 Cal.App.2d at p. 120 [interpreting the predecessor to § 9241, former § 1772].) "[T]he legislative body could by

merely amending [the challenged ordinance] in a minor way and adding additional matters, then adopt in its entirety the legislative act objected to in the referendum petition. If such were the law, the council merely by continuous amendment of that act could deprive the voters of ever having an act either repealed or brought to a vote." (*Martin I,* at p. 120) For this reason, the stay is not confined to the specific ordinance and its exact terms. It extends to repassage of the challenged ordinance with minor amendments. This rule is "inherent in the very principle of the referendum and the spirit of the section." (*Id.* at p. 121.) "If such were not the case, no referendum could ever be brought to a conclusion, because a council could prevent it by recurrent amendments to the disputed legislative act." (*Ibid.*)

The stay provision does not tie a legislative body's hands entirely. It does not prevent a legislative body or a city council from adopting any measures involving the same subject matter. In determining whether a subsequently enacted ordinance violates the stay provisions of section 9241, we ask "whether the second legislative enactment is essentially the same as the first." (*Martin I, supra,* 176 Cal.App.2d at p. 118; see also *Assembly v. Deukmejian* (1982) 30 Cal.3d 638, 678 [180 Cal.Rptr. 297, 639 P.2d 939] [rejection of referendum measure bars new legislation which is not "essentially different"].) " 'It may be conceded that, ordinarily, when an ordinance which has been suspended by a referendum has been repealed by the council, the council cannot enact another ordinance in all essential features like the repealed ordinance; .... The council may, however, deal further with the subject matter of the suspended ordinance, by enacting an ordinance essentially different from the ordinance protested against, avoiding, perhaps, the objections made to the first ordinance.' [Citations.]" (*Martin I,* at p. 118.)

In deciding whether a new measure is "essentially the same" or "essentially different," we focus on the features that gave rise to popular objection. For example, in *Martin I,* a referendum petition challenged the commercial lease of public land. The city council passed a new resolution, which altered the length of the lease and the affected land. These changes were immaterial, and the new resolution was essentially the same, because "no one will contend that the voters signing the referendum petition were doing so because of the extra five-year period in the terms of the leases." (*Martin I, supra,* 176 Cal.App.2d at p. 120.) Instead, "[u]ndoubtedly the voters were concerned with the fundamental principle of the resolutions, namely, the leasing of city property for the commercial purposes specified in the resolutions. That principle was identical in the suspended resolutions and in [the new resolution]." (*Ibid.*) Consequently, the new resolution was essentially the same and ran afoul of the relevant stay provision.

In contrast, in *Reagan v. City of Sausalito* (1962) 210 Cal.App.2d 618 [26 Cal.Rptr. 775], the court concluded that a subsequent resolution was permissible because it was not essentially the same as two measures previously challenged and rescinded, but was instead "substantially dissimilar." (*Id.* at p. 630.) The original measures provided for the purchase of certain land, followed by a lease on favorable terms to a specific private corporation. The subsequent resolution established only a policy in favor of acquiring the land and eliminated the lease agreement. These dissimilarities rendered the second resolution lawful.

The issue in these cases is not how the second measure will affect referendum proponents. San Anselmo argued to the trial court, and the trial court agreed, that the interim contract might actually harm Marin Sanitary Service and benefit North Bay if Marin Sanitary Service provided poor service and bred dissatisfaction among prospective voters. Thus, the trial court denied relief because Lindelli and North Bay failed to show that the interim contract would benefit Marin Sanitary Service and harm North Bay. This analysis substitutes an inquiry into the wisdom and effect of legislation in place of an inquiry into the power to enact legislation. ■ But the referendum stay provision is agnostic on the merits of legislation. Good legislation and bad legislation, beneficial legislation and ill-considered legislation, all are subject to the effect of the referendum stay. Neither the trial court nor we are authorized to speculate as to the positive or negative effects of a subsequently enacted measure. The only question we ask is whether the legislative body had the power to enact it. The referendum stay provision temporarily reverts legislative power over particular subject matter to the people. The legislative body may not violate that stay by enacting essentially identical legislation on the same subject matter.

■ The determination whether subsequent legislation is essentially the same begins with a comparison of the terms of the legislation challenged by referendum and the subsequent legislation, focusing on the features that gave rise to popular objection. Here, the interim contract differs from the original franchise only in the length of time covered: one year versus five years. All other terms, including the identity of the service provider, are identical. The record demonstrates that it is the change in provider, and not the length of the franchise grant, that inspired the referendum. Thus, the interim contract is "essentially the same" as the challenged franchise ordinance and violates section 9241's stay provision.

San Anselmo argues that the change in duration alone is sufficient to render the interim contract substantially different from the five-year franchise. The logical consequence of this argument is that a legislative body could reenact any challenged measure for the period from certification of a referendum to the

referendum election, because the interim nature of the measure would qualify as a substantial difference. We reject this interpretation of section 9241, which would essentially delete the stay provision in its entirety.

San Anselmo asserts that as of December 1, it would have had to choose some provider, and that application of the stay provision to the interim contract would paralyze it. It is of course true that San Anselmo would have had to make some arrangement for the provision of waste management services for its residents. But San Anselmo could have done so without violating section 9241. Because the referendum was triggered by San Anselmo's choice of a new and different provider, San Anselmo could have awarded an interim contract to North Bay without violating the stay provision. Such an interim contract would have been essentially dissimilar from the challenged franchise. Depending on whether the referendum was triggered by concerns over the chosen new provider or dissatisfaction with the replacement of the old provider, San Anselmo might also have been able to award an interim contract to a third party that was neither the old provider nor the provisional new provider without violating the stay provision.

We note one other policy consideration in favor of our interpretation of section 9241. Among other salutary consequences, this interpretation eliminates any incentive on the part of a municipality to drag its feet in setting a date for a referendum election. Under section 9241, a municipality is given a choice as to the date for the referendum election: it may either set a special election or submit the ordinance to the voters at the next regular election. If the status quo is preserved, there is no incentive to choose the latest possible election date in the hope that opposition to a challenged measure will fade. Though plaintiffs impugn San Anselmo's motives in choosing a date 13 months after certification of the referendum, we pass no judgment on San Anselmo's asserted economic reasons. We note only that our construction of the stay provision will eliminate any future temptation a municipality might have to choose an election date based on considerations at odds with the free and full exercise of the referendum power.

IV. *The Approval of the Interim Contract Does Not Fall Within Any Exception to Section 9241*

San Anselmo contends that the resolution approving the interim contract is not subject to section 9241 for three additional reasons: (1) it is an administrative or executive act rather than a legislative act, (2) it is an urgency measure, and (3) it is a call for an election. We are not persuaded by these arguments.

First, "[t]he power of referendum applies only to acts that are legislative in character; executive or administrative acts are not within the scope of that

remedy." (*Housing Authority v. Superior Court* (1950) 35 Cal.2d 550, 557 [219 P.2d 457]; accord, *Wheelright v. County of Marin* (1970) 2 Cal.3d 448, 457 [85 Cal.Rptr. 809, 467 P.2d 537].) When San Anselmo originally approved the interim contract, it characterized the approval as quasi-judicial; on appeal, it now characterizes the approval as either administrative or executive. In any event, according to San Anselmo, the interim contract approval was not legislative and thus is immune from the referendum power.

Under the most frequently stated description of the line between legislative and administrative/executive acts, " '[a]cts constituting a declaration of public purpose, and making provisions for ways and means of its accomplishment, may be generally classified as calling for the exercise of legislative power. Acts which are to be deemed as acts of administration, and classed among those governmental powers properly assigned to the executive department, are those which are necessary to be done to carry out legislative policies and purposes already declared by the legislative body, or such as are devolved upon it by the organic law of its existence.' [¶] ... 'Again it has been said: "The power to be exercised is legislative in its nature if it prescribes a new policy or plan; whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it." ' [Citation.]" (*Martin v. Smith* (1960) 184 Cal.App.2d 571, 575 [7 Cal.Rptr. 725].)

The issuance of a franchise involves the setting, not the implementation, of public policy; it rests on a determination in the first instance as to which private entity is best suited to provide services for the public. Thus, "[t]he rule is firmly established that the granting of a franchise by a city or county is a legislative act." (E.g., *Pacific Rock etc. Co. v. City of Upland* (1967) 67 Cal.2d 666, 668 [63 Cal.Rptr. 572, 433 P.2d 476], collecting cases.) This rule extends to waste management franchises. (*Empire Waste Management v. Town of Windsor, supra,* 67 Cal.App.4th at p. 717, fn. 1.)

Because the Marin Sanitary Service contract is for a period of only approximately one year, it does not necessarily rise to the level of a franchise. (See *Saathoff v. City of San Diego* (1995) 35 Cal.App.4th 697, 705 [41 Cal.Rptr.2d 352] (*Saathoff*) [requiring some degree of permanence for contract to be treated as franchise].) Nevertheless, the interim nature of the waste management contract does not change the legislative character of the decision to award it. The decision, even though for a shorter period, involved the same initial policy decision that qualifies longer grants of franchises as legislative acts: when awarding the contract, San Anselmo decided in the first instance which private entity was best suited to provide services for the public welfare for the duration of the contract. Because this decision was legislative, it is subject to the referendum process.

Relying on *Saathoff*, *supra*, 35 Cal.App.4th 697, San Anselmo urges us to defer to its determination that its action was nonlegislative because it involved the approval of a contract, not a franchise. We find nothing in *Saathoff* to support such deference: the *Saathoff* court gave limited deference to inferences drawn by the trial court in deciding whether a franchise had been established, but it did not give deference to the municipality. (*Id.* at pp. 700–705.) Moreover, the line between franchise and contract is not dispositive; while franchise grants are always legislative, contract approvals ordinarily are too. "It has long been established that 'the award of a contract, and all the acts leading up to the award, are legislative in character.' [Citations.]" (*Joint Council of Interns & Residents v. Board of Supervisors* (1989) 210 Cal.App.3d 1202, 1211 [258 Cal.Rptr. 762].)

■■■ Second, San Anselmo portrays the interim contract as an urgency measure. We agree that urgency measures are exempt from the stay provisions of section 9241. (§ 9235, subd. (b); see also Cal. Const., art. II, § 9, subd. (a).) An "ordinance for the immediate preservation of the public peace, health or safety" may take effect immediately. (§ 9235, subd. (b).) However, the interim waste management contract does not qualify as an urgency measure.

Section 9235 does not define further what measures qualify as urgency measures. The state Constitution, which defines statewide urgency measures, is instructive. The constitutional definition mirrors section 9235: urgency statutes are "those necessary for immediate preservation of the public peace, health or safety." (Cal. Const., art. IV, § 8, subd. (d).) The constitutional definition goes on to expressly exclude statutes that "grant any franchises." (*Ibid.*) Thus, the original waste management franchise resolution was not an urgency measure.

The interim contract resolution is likewise not an urgency measure. Both the statutory and constitutional definitions emphasize that the threat to public health must be immediate. Contrary to San Anselmo's representations, the record does not show that North Bay was fired as the waste management service provider. Instead, North Bay was still providing service when the "urgency" measure was passed on October 8, 2002, and was scheduled to do so for approximately two more months, until well after an ordinary resolution would have gone into effect. (See § 9235.) The situation presented no imminent risk that garbage would pile up in the streets without immediate legislative action. Moreover, San Anselmo had available alternative providers to whom it could have granted an interim contract without violating the stay provision. No facts support San Anselmo's finding that the interim contract was an urgency measure.

Third, measures that call for an election are exempt from referenda stays. (§ 9235, subd. (a); Cal. Const., art. II, § 9, subd. (a).) This exception does not apply here because the interim resolution did not call for an election. The call for an election was handled orally, by a separate vote.

We are not persuaded by San Anselmo's arguments. However, we emphasize that our decision that the award of the interim contract violates the stay provisions of section 9241 "is strictly judicial in nature. It does not represent, nor should it be used by anyone, as an endorsement of the views"—specifically, the views on the respective merits of either waste management provider—"of either the proponents or opponents of the [referendum measure]. The people are the proper judges of those matters, as to which this court expresses no opinion whatsoever." (*Assembly v. Deukmejian, supra,* 30 Cal.3d at p. 678.)

### DISPOSITION

The order denying the petition for a writ of mandate was in error. We reverse the trial court judgment and remand the case to the trial court for further proceedings in accord with this decision. Appellants are awarded their costs.

Jones, P. J., and Stevens, J., concurred.

A petition for a rehearing was denied September 23, 2003, and the petition of both respondents and real party in interest for review by the Supreme Court was denied December 10, 2003.