Filed 11/22/23  Harris v. Jiminez CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| CLIFTON HARRIS, | |
| Plaintiff and Appellant, | E079547 |
| v. | (Super.Ct.No. CIVSB2211063) |
| MICHAEL JIMINEZ, as Interim Registrar of Voters et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County.  David Cohn, Judge.  Affirmed.

Law Office of Robert D. Conaway and Robert D. Conaway for Plaintiff and Appellant.

Tom Bunton, County Counsel, Jolena E. Grider, Deputy County Counsel for Defendants and Respondents Michael Jiminez, as Interim Registrar of Voters et al.

No appearance for defendant and respondent Shannon Dicus.

1

Plaintiff and appellant Clifton Harris (Harris), an approved candidate for Sheriff of San Bernardino County (the County), sought a writ of mandate in the trial court, directing defendants and respondents, including Michael Jiminez as Interim Registrar of Voters, to conduct the election for sheriff during the general election in November (Elec. Code, § 324, subd. (a)(1))—not during the primary election in June—as allegedly required by Article III, section 303 of the Charter of San Bernardino County, California (the Charter). Relying on Elections Code section 1300, the trial court denied the writ petition. Harris contends the trial court erred because, per the Charter, the election for sheriff must be held in November. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

The County held its election for sheriff on June 7, 2022, which was the day of the statewide primary election (Elec. Code, § 316). Harris filed his writ petition in the trial court on June 9, 2022.

In June 2022, Elections Code section 1300, on which the trial court relied, read, in relevant part, "[A]n election to select county officers shall be held with the statewide primary at which candidates for Governor are nominated. In the event that county officers are not elected pursuant to Sections 8140 and 8141, this election shall be deemed a primary election and a county general election shall be held with the statewide general election to select county officers."

2

**DISCUSSION**

At the outset, we will explain why we are not resolving the case by simply citing Elections Code section 1300. "The provisions of a charter are the law of the State and have the force and effect of legislative enactments." (Cal. Const., art. 11, § 3(a).) Therefore, "[w]henever any county has framed and adopted a charter, . . . the general laws adopted by the Legislature . . . shall, as to such county, be superseded by said charter as to matters for which, under this section it is competent to make provision in such charter." (Cal. Const., art. 11, § 4(g).) "County charters shall provide for: . . . [¶] An elected sheriff, an elected district attorney, an elected assessor, other officers, their election or appointment, compensation, terms and removal." (Cal. Const., art. 11, § 4(c).) In other words, county charters supersede general laws on the topics delineated by our state Constitution, such as the election of sheriff. Therefore, we must interpret the Charter.

We apply the de novo standard of review. (*Lindelli v. Town of San Anselmo* (2003) 111 Cal.App.4th 1099, 1104.) "[W]e construe the [C]harter in the same manner as we would a statute. [Citations.] Our sole objective is to ascertain and effectuate legislative intent. [Citation.] We look first to the language of the [C]harter, giving effect to its plain meaning." (*Domar Electric, Inc. v. City of Los Angeles* (1994) 9 Cal.4th 161, 171-172.)

The Charter provides: "All elective County officers shall be elected at the general election at which the Governor is elected . . . . All such elective County officers shall be nominated and elected in the manner provided by general laws for the nomination and

3

election of such officers." (The Charter, art. III, § 303.) The plain language of the Charter contemplates a "nomination and election."

The Charter provides that the "nomination" shall occur as "provided by general laws." Therefore, we look to the Elections Code for the definition of "nominate." The Elections Code provides: " 'Nominate' means the selection, at a state-conducted primary election, of candidates who are entitled by law to participate in the general election for that office." (Elec. Code, § 332.5) In defining 'primary election,' the Election Code reflects: " 'Primary election' includes all primary nominating elections provided for by this code." (Elec. Code, § 341.) Thus, nominations occur at the primary election. Accordingly, we interpret "nomination" in the Charter to refer to primary elections.

The manner of the nomination/primary election is controlled "by general laws." (The Charter, art. III, § 303.) The general laws provide that "[a]ny candidate for a nonpartisan office who at a primary election receives votes on a majority of all the ballots cast for candidates for that office shall be elected to that office. . . . Where a candidate has been elected to a nonpartisan office at the primary election, that office shall not appear on the ballot at the ensuing general election." (Elec. Code, § 8140.) This statute means that, if a nonpartisan candidate receives more than 50 percent of the vote in the primary election, then the candidate wins the office and need not appear on the general election ballot.

4

In sum, we interpret the Charter as follows:  Candidates for nonpartisan county offices are to appear on the primary election ballot.  If a candidate receives a majority of the votes, then the candidate wins the office and need not appear on the general election ballot.  In regard to the portion of the Charter that reads, "All elective County officers shall be elected at the general election at which the Governor is elected" (the Charter, art. III, § 303), we interpret that as referring to the particular four-year interval at which the County's elections must take place.

The Governor is "elected every fourth year at the same time and places as members of the Assembly."  (Cal. Const. Art 5, § 2.)  Members of the Assembly are elected "on the first Tuesday after the first Monday in November of even-numbered years unless otherwise prescribed by the Legislature."  (Cal. Const. Art 4, § 2.)  Correspondingly, nonpartisan officers of the County must be elected every fourth year of even-numbered years, in the same intervals as the Governor.  If a nonpartisan county candidate wins a majority of the votes at the primary election, then, for that particular office, the primary election legally transmutes into a general election.  (*Pini v. Fenley* (2017) 9 Cal.App.5th 67, 72; see also *Fields v. Eu* (1976) 18 Cal.3d 322, 325, fn. 1.)  In that legal transmutation, the candidate has effectively participated in a general election on the same election cycle as the governor.

Harris contends that the specific language in the Charter, requiring "all elective County officers [to] be elected at the general election at which the Governor is elected" (the Charter, art. III, § 303), prevails over the general language regarding nominations and elections being conducted in accordance with the general laws.  (Code Civ. Proc.,

5

§ 1859.)  The legal principle that the specific prevails over the general only applies when the two subjects "cannot be reconciled."  (*People v. Wheeler* (1992) 4 Cal.4th 284, 293.)  We have reconciled the portion of the Charter disputed by Harris.  Therefore, we need not rely on the principle favoring the specific over the general.

Harris cites to Government Code section 24200, subdivision (a), which reads, "Except as otherwise provided, all elective county officers shall be elected at the general election at which the Governor is elected."  (Govt. Code, § 24200 [eff. through Dec. 31, 2022].)  The Charter is in agreement with that statute, in that the Charter requires "all elective County officers shall be elected at the general election at which the Governor is elected."  (The Charter, art. III, § 303.)  As explained *ante*, we interpret that provision of the Charter as referring to the particular four-year interval at which the County's elections must take place.

Harris relies on Elections Code section 1003, subdivision (b), which provides: "This chapter shall not apply to the following:  [¶] . . . [¶]  Elections held in chartered cities or chartered counties in which the charter provisions are inconsistent with this chapter."

There are four statutes in the chapter.  The first statute pertains to establishing election dates, i.e., "The first Tuesday after the first Monday in November of each year."  (Elec. Code, § 1000, subd. (e).)  The Charter provides, "All elective County officers shall be elected at the general election at which the Governor is elected."  (The Charter, art. III, § 303.)  The Charter does not set elections for a particular day of a

6

particular month, so there is no inconsistency giving the Charter priority over the statute.

The second statute concerns establishing statewide election dates, i.e., "An election held in November of an even-numbered year." (Elec. Code, § 1001, subd. (a).) Again, the Charter does not set elections for a particular day of a particular month, so there is no inconsistency giving the Charter priority over the statute.

The third statute provides, "Except as provided in Section 1003, notwithstanding any other provisions of law, all state, county, municipal, district, and school district elections shall be held on an established election date." (Elec. Code, § 1002.) The Charter provides that "County officers shall be elected at the general election at which the Governor is elected." (The Charter, art. III, § 303.) Thus, the statute and the Charter are in harmony. The statute and the Charter require the elections to be held on an established election date. The fourth statute is section 1003, which we set forth *ante*. Because there is not an inconsistency between the Charter and the statutes in the chapter, the exception set forth in Elections Code section 1003, subdivision (b), does not apply.

## DISPOSITION

The order denying the writ petition is affirmed.  Respondents Michael Jiminez,

as Interim Registrar of Voters et al., are awarded costs on appeal.  (Cal. Rules of Court,

rule 8.278(a)(1).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER  
Acting P. J.


We concur:


FIELDS  
J.


MENETREZ  
J.

8