[No. A108886. First Dist., Div. Five. May 26, 2006.]

SUZANNE N. LINDELLI et al., Plaintiffs and Respondents, v.
TOWN OF SAN ANSELMO et al., Defendants and Respondents;
MARIN SANITARY SERVICE, Real Party in Interest and Respondent;
REMCHO, JOHANSEN & PURCELL, Movant and Appellant.

1500

## COUNSEL

Remcho, Johansen & Purcell, Robin B. Johansen and Thomas A. Willis for Movant and Appellant.

No appearance for Plaintiffs and Respondents.

No appearance for Defendants and Respondents.

Bien & Summers, Elliot L. Bien; Ragghianti Freitas and Gary T. Ragghianti for Real Party in Interest and Respondent.

## OPINION

**GEMELLO, J.**—The issue presented is whether attorneys acting on their own behalf can intervene in a client's lawsuit and move for attorney fees under Code of Civil Procedure section 1021.5, which provides for fee awards in cases resulting in the enforcement of important rights affecting the public interest.

In *Lindelli v. Town of San Anselmo* (2003) 111 Cal.App.4th 1099 [4 Cal.Rptr.3d 453] (*Lindelli I*), we held that the Town of San Anselmo violated the stay provisions of Elections Code section 9241 in awarding an interim contract for waste management services to Marin Sanitary Service notwithstanding the fact that an earlier ordinance awarding a contract for such services to Marin Sanitary Service was the subject of an upcoming referendum election. The case returns because on remand, the successful petitioners, Suzanne N. Lindelli and North Bay Corporation, declined to authorize their attorneys, Remcho, Johansen & Purcell (RJP), to file a motion for an award of attorney fees under Code of Civil Procedure section 1021.5.[1] Thereafter, RJP sought leave to intervene to file a motion for attorney fees on their own behalf. The trial court denied RJP's motion.

Resolution of the issue presented is directed by *Flannery v. Prentice* (2001) 26 Cal.4th 572 [110 Cal.Rptr.2d 809, 28 P.3d 860] (*Flannery*). In *Flannery*, the California Supreme Court held that, absent an agreement allocating fee awards to the client, fees awarded under the Fair Employment and Housing Act "belong to the attorneys who labored to earn them." (*Flannery*, at p. 575.) The court departed from federal precedent and construed "prevailing party" in Government Code section 12965 to refer to either a litigant or its counsel. (*Flannery*, at p. 578.) Following the reasoning of the *Flannery* decision, we hold that RJP has standing to move for fees and sufficient interest in an award of attorney fees under section 1021.5 to support permissive intervention under Code of Civil Procedure section 387, subdivision (a). We reverse and remand for the trial court to calculate and award a reasonable fee for the appeal in *Lindelli I*.

FACTUAL AND PROCEDURAL BACKGROUND

We incorporate the factual and procedural background from our decision in *Lindelli I, supra,* 111 Cal.App.4th at pages 1103–1104.

From 1994 to 2002, San Anselmo Refuse & Recycling, an affiliate of North Bay Corporation (collectively North Bay), provided waste management ser-

---

[1] Code of Civil Procedure section 1021.5 provides: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

vices for San Anselmo. The North Bay franchise was to expire on November 30, 2002. On August 27, 2002, San Anselmo passed a resolution awarding the new waste management franchise to a competitor, Marin Sanitary Service.

Petitioner Suzanne Lindelli (Lindelli) and others obtained enough signatures to qualify a referendum petition protesting the award of the franchise to Marin Sanitary Service. The petition was certified on September 26, 2002. On September 28, San Anselmo published a notice seeking interim contract proposals for the period from expiration of the existing franchise agreement until a referendum election could be held. North Bay, Marin Sanitary Service, and a third party submitted bids. On October 8, San Anselmo awarded an interim contract to Marin Sanitary Service under the identical terms and conditions as the challenged franchise agreement. The interim contract differed from the original franchise agreement only in its duration. San Anselmo set the vote on the referendum petition for the next permissible general election, November 4, 2003.

On October 9, 2002, North Bay and Lindelli filed a written protest. They argued that the interim contract violated the stay provisions of Elections Code section 9241. After receiving no response, they filed a petition for writ of mandate, which was denied by the trial court. Lindelli and North Bay then sought a writ of mandate and stay from this court to stop the interim contract from going into effect. We denied their petition.

On appeal from the trial court's decision on the petition for writ of mandate, Lindelli and North Bay withdrew their request to have Marin Sanitary Service removed as interim provider and confined themselves to a request for a ruling that the issuance of the interim contract to Marin Sanitary Service was unlawful. We denied San Anselmo's motion to dismiss the appeal as moot. Although Lindelli and North Bay's concession that they were no longer seeking removal of the interim provider ordinarily might have rendered the case moot, we exercised our discretion to consider the appeal on the merits because "[t]he election law issue presented in this case is one of broad importance, capable of recurring, and likely otherwise to escape review." (*Lindelli I, supra,* 111 Cal.App.4th at p. 1104.)

On the merits, we concluded that San Anselmo had violated the stay provisions of Elections Code section 9241 in accepting bids for an interim contract and then awarding Marin Sanitary Service the year-long interim contract until the referendum election. (*Lindelli I, supra,* 111 Cal.App.4th at pp. 1103, 1111.) We reversed the trial court judgment denying the petition for

writ of mandate and remanded for further proceedings in accord with our decision. (*Id.* at p. 1115.)

The principal issue on remand was whether petitioners were entitled to attorney fees under section 1021.5. Although RJP charged petitioner North Bay on an hourly basis for litigating this case in the trial court, RJP agreed to pursue the appeal in *Lindelli I, supra,* 111 Cal.App.4th 1099, without charge to the petitioners, based on the expectation of a statutory fee award. On July 29, 2004, a few days before RJP intended to file an attorney fees motion on petitioners' behalf, RJP learned from petitioner North Bay that it no longer wished to be a moving party in the fee request. On August 3, 2004, petitioner Lindelli informed RJP that she also no longer wished to be a moving party in the fee request.

On August 4, 2004, RJP filed a motion to intervene under section 387 to request reasonable attorney fees and costs pursuant to section 1021.5. Real party in interest Marin Sanitary Service opposed the motion and San Anselmo joined in the opposition. The trial court denied RJP's motion, concluding that RJP lacked standing to seek an award of fees on their own behalf.[2]

DISCUSSION

I. *General Standards for Permissive Intervention*

██ Section 387, subdivision (a), states in relevant part: "Upon timely application, any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding." A third party may intervene (1) where the proposed intervener has a direct interest, (2) intervention will not enlarge the issues in the litigation, and (3) the reasons for the intervention outweigh any opposition by the present parties. (*US Ecology, Inc. v. State of California* (2001) 92 Cal.App.4th 113, 139 [111 Cal.Rptr.2d 689].) "The purpose of allowing intervention is to promote fairness by involving all parties potentially affected by a judgment." (*Simpson Redwood Co. v. State of California* (1987) 196 Cal.App.3d 1192, 1199 [242 Cal.Rptr. 447]; see also *City and County of San Francisco v. State of California* (2005) 128 Cal.App.4th 1030, 1036 [27 Cal.Rptr.3d 722] (*San Francisco*) [section 387 "balances the

---

[2] We grant RJP's request for judicial notice of the interim agreement. (See *People ex rel. Lungren v. Community Redevelopment Agency* (1997) 56 Cal.App.4th 868, 870, fn. 2 [65 Cal.Rptr.2d 786].) As part of the interim agreement, Marin Sanitary Service agreed to indemnify the Town of San Anselmo for any liability, including attorney fees, resulting from any determination that the agreement was unlawful. We deny RJP's request for judicial notice of the decision in *Nome v. Town of San Anselmo* (1989) 211 Cal.App.3d 1497 [260 Cal.Rptr. 205], as irrelevant to the issues presented.

interests of others who will be affected by the judgment against the interests of the original parties in pursuing their litigation unburdened by others"].) Section 387 should be liberally construed in favor of intervention. (*Simpson Redwood Co.*, at p. 1200.)

The fundamental question as to the permissive intervention standards is whether RJP has the type of direct interest in a section 1021.5 fee award required to support intervention under section 387. To support permissive intervention, the proposed intervener's interest must be direct rather than consequential, and it must be an interest that is capable of determination in the action. (*San Francisco, supra,* 128 Cal.App.4th at p. 1037.) "The requirement of a 'direct' and 'immediate' interest means that the interest must be of such a direct and immediate nature that the moving party ' "will either gain or lose by the direct legal operation and effect of the judgment." [Citation.]' [Citations.] 'A person has a direct interest justifying intervention in litigation where the judgment in the action *of itself* adds to or detracts from his legal rights without reference to rights and duties not involved in the litigation. [Citation.]' [Citations.] Conversely, 'An interest is consequential and thus insufficient for intervention when the action in which intervention is sought does not directly affect it although the results of the action may indirectly benefit or harm its owner.' " (*Ibid.*)

A trial court decision to grant or deny an intervention request is ordinarily reviewed for abuse of discretion. (*San Francisco, supra,* 128 Cal.App.4th at p. 1036.) However, whether RJP has sufficient interest in a section 1021.5 fee award to support intervention under section 387 is a question of statutory interpretation subject to de novo review. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].)

## II. *RJP Has a Direct and Immediate Interest in an Award of Fees Under Section 1021.5*

The trial court concluded that RJP lacked standing to intervene and move for an award of fees on its own behalf. Respondent contends that the trial court was correct because the interest of an attorney in fees payable out of litigation is indirect and will not support intervention. Appellants contend that the trial court erred in concluding that RJP lacks standing to seek an award of attorney fees on its own behalf, relying on *Flannery, supra,* 26 Cal.4th 572. Following the reasoning of the California Supreme Court in *Flannery,* we

conclude that RJP has a direct and immediate interest in a fee award under section 1021.5.

## A. *Flannery v. Prentice*

*Flannery, supra,* 26 Cal.4th 572, involved an award of attorney fees under Government Code section 12965, which is part of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).[3] The case resolved a discrete question: "The question presented is to whom, as between attorney and client, attorney fees awarded under Government Code section 12965 . . . belong when no contractual agreement provides for their disposition. We conclude that, absent proof on remand of an enforceable agreement to the contrary, the attorney fees awarded in this case belong to the attorneys who labored to earn them." (*Flannery,* at p. 575, fn. omitted.)

In *Flannery,* the plaintiff sued her former employer alleging violations of FEHA, the jury awarded $250,000 in damages, and the trial court awarded over $1 million in attorney fees under Government Code section 12965 and Code of Civil Procedure section 1021.5. (*Flannery, supra,* 26 Cal.4th at pp. 575–576.)[4] Plaintiff filed a separate action alleging malpractice and seeking a declaration that she was entitled to the entire statutory fee award in her FEHA action because she had not agreed to give those fees to her counsel. (26 Cal.4th at pp. 575–576.) The trial court awarded fees to counsel. (*Id.* at p. 577.)

The California Supreme Court held that "attorney fees awarded pursuant to [Government Code] section 12965 (exceeding fees already paid) belong, absent an enforceable agreement to the contrary, to the attorneys who labored to earn them." (*Flannery, supra,* 26 Cal.4th at p. 590.) In other words, the fee award belongs to the attorney in the first instance and only belongs to the client if an agreement so specifies. (*Ibid.*) This holding is critical to our analysis of the issues presented.

---

[3] Government Code section 12965, subdivision (b) provides that in FEHA actions "the court, in its discretion, may award to the prevailing party reasonable attorney's fees and costs, including expert witness fees . . . ."

[4] The court of appeal reversed and remanded for recalculation of the fee. (*Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 637, 648 [71 Cal.Rptr.2d 632] (*Flannery v. CHP*).) It held that plaintiffs were not entitled to a fee based on section 1021.5 because the primary effect of the case was the vindication of plaintiff's own personal right and economic interest. (*Flannery v. CHP,* at pp. 637, 648.) It further held that an award of fees under Government Code section 12965 was proper and remanded for reconsideration of the amount of the fee award. (*Flannery v. CHP,* at pp. 637, 648.) On remand the trial court awarded a reduced amount of fees, which was affirmed on appeal. (*Flannery, supra,* 26 Cal.4th at p. 576.)

The court parsed the term "party," concluding that the reference to the "prevailing party" in Government Code section 12965, subdivision (b), is " 'reasonably susceptible to more than one interpretation.' " (*Flannery, supra,* 26 Cal.4th at p. 578, quoting *Levy v. Superior Court* (1995) 10 Cal.4th 578, 582 [41 Cal.Rptr.2d 878, 896 P.2d 171].) The term is " 'commonly understood to refer to either the actual litigant or the litigant's attorney of record,' " and that is the meaning courts must ascribe to the term " 'unless the Legislature has clearly indicated a contrary intent.' " (*Flannery,* at p. 578, quoting *McDowell v. Watson* (1997) 59 Cal.App.4th 1155, 1164 [69 Cal.Rptr.2d 692].) Alternatively, even were "party" construed to mean a litigant only, that would not preclude the conclusion "that *beneficial* ownership of section 12965 fees remains, absent contract, with the attorneys they are designed to compensate." (*Flannery,* at p. 578.)

Because the words of the statute itself did not resolve whether the plaintiff or her counsel was entitled to the fee award, the court turned to an analysis of the legislative intent and public policy. (*Flannery, supra,* 26 Cal.4th at p. 579.)[5] The court drew an analogy between Government Code section 12965 and Code of Civil Procedure section 1021.5, which codifies the "private attorney general" fee doctrine and provides for fee awards in cases enforcing important rights affecting the public interest. (*Flannery,* at p. 582.) Beginning with the clear public policy statement set forth in Government Code section 12920 and relying on both the statutory language and cases under Code of Civil Procedure section 1021.5, the court reasoned, "There is no doubt that ' "privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions" ' [citation], and ' "[w]ithout some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." ' " (*Flannery,* at p. 583.) Under section 1021.5 fee awards are properly made to plaintiffs' attorneys rather than to plaintiffs themselves. (*Flannery,* at p. 582, citing *Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 682 & fn. 26 [186 Cal.Rptr. 589, 652 P.2d 437].) The court noted that the Legislature did not repudiate those precedents in enacting or amending Government Code section

---

[5] At the outset of the discussion of legislative intent, the *Flannery* court considered plaintiff's argument that Government Code section 12965 should be construed in light of federal cases construing federal attorney fee provisions. (*Flannery, supra,* 26 Cal.4th at pp. 579–582.) As we explain later in this decision (*post,* at pp. 1513–1516), because the court interpreted Government Code section 12965 differently than the federal courts' interpretation, the discussion of those federal cases is not critical to our analysis.

12965. (*Flannery*, at p. 582; see *Sharon S. v. Superior Court* (2003) 31 Cal.4th 417, 433 [2 Cal.Rptr.3d 699, 73 P.3d 554] [when the Legislature amends a statute without changing portions that have been construed by the courts, the Legislature is presumed to have known of and acquiesced in the previous judicial construction].)

The court explained that the purpose of FEHA is to safeguard the right of Californians to employment free from discrimination and that attorneys considering whether to undertake cases vindicating fundamental public policies "may require statutory assurance that, if they obtain a favorable result for their client, they will actually receive the reasonable attorney fees provided for by the Legislature and computed by the court." (*Flannery, supra*, 26 Cal.4th at pp. 582–583.) Fee-shifting statutes aim to enable private parties to obtain legal assistance by providing such statutory assurance that attorneys will receive a reasonable fee. (*Id.* at p. 583.)

### B. *Interpretation of Section 1021.5*

RJP seeks to intervene in order to request fees under section 1021.5. As noted previously, section 1021.5 is the codification of the "private attorney general" fee doctrine. (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 933 [154 Cal.Rptr. 503, 593 P.2d 200] (*Woodland Hills*).) The purpose of the doctrine is to encourage suits effectuating fundamental public policies by awarding substantial attorney fees to those who successfully bring such actions. (*Ibid.*)

██ Code of Civil Procedure section 1021.5 and Government Code section 12965 share similar language and purposes and an interpretation of one carries weight in interpreting the other. (See *Tipton-Whittingham v. City of Los Angeles* (2004) 34 Cal.4th 604, 610 [21 Cal.Rptr.3d 371, 101 P.3d 174] ["In deciding whether to, and how to, award attorney fees under section 12965, subdivision (b), courts will look to the rules set forth in cases interpreting section 1021.5."].) The purposes for awarding fees in FEHA cases apply with equal force in the section 1021.5 context. In fact, the *Flannery* court relied on a section 1021.5 case in explaining the need for fee awards in public interest cases. (*Flannery, supra*, 26 Cal.4th at p. 583, citing *Baggett v. Gates* (1982) 32 Cal.3d 128, 142 [185 Cal.Rptr. 232, 649 P.2d 874].) The need for fee shifting in the section 1021.5 context may even be greater than in the FEHA context because section 1021.5 fee awards are only appropriate where the

cost of the litigation transcends the plaintiff's personal interest. (*Woodland Hills, supra,* 23 Cal.3d at p. 941.) Thus, although FEHA plaintiffs may have substantial monetary recoveries from which attorneys could be paid, the same may not be true in section 1021.5 cases.[6]

Notably, the *Flannery* court relied on cases under section 1021.5 in construing Government Code section 12965 as authorizing fee awards to attorneys and rejected Justice Kennard's suggestion in the dissent to follow the construction of "prevailing party" adopted by the United States Supreme Court in *Evans v. Jeff D.* (1986) 475 U.S. 717 [89 L.Ed.2d 747, 106 S.Ct. 1531] (*Evans*). (See *Flannery, supra,* 26 Cal.4th at pp. 582, 594–596 (dis. opn. of Kennard, J.) The *Evans* court construed "prevailing party" in 42 United States Code section 1988, a federal fee-shifting provision, as referring to the litigants alone. (*Evans,* at pp. 730–732.) We find no principled reading of the majority opinion in *Flannery* that allows us to follow the reasoning in *Evans* and hold that "prevailing party" under section 1021.5 refers to the client-litigant only. To do so would require us to adopt the reasoning of the dissent in *Flannery,* which we are not at liberty to do.

We see no sound basis to distinguish between Government Code section 12965 and Code of Civil Procedure section 1021.5 in the construction of the word "party" and we have found nothing in the language of section 1021.5 or its legislative history clearly indicating that the Legislature intended "party" to refer only to a litigant. (See *Flannery, supra,* 26 Cal.4th at p. 578.) Accordingly, we do not construe "successful party" in Code of Civil Procedure section 1021.5 more narrowly than the *Flannery* court construed "prevailing party" in Government Code section 12965. We construe "successful party" in section 1021.5 as authorizing an award of attorney fees to a litigant or its counsel. (See *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 570 [21 Cal.Rptr.3d 331, 101 P.3d 140] [stating that "prevailing party" and "successful party" are "synonymous" and characterizing *Flannery* as standing for the proposition that "the word 'party' as part of a prevailing party fee statute refers to litigant or litigant's attorney"].)[7] Attorney fees awarded

---

[6] Indeed, the Court of Appeal in *Flannery* reversed the fee award to the extent it was based on section 1021.5, because the primary effect of the case was the vindication of plaintiff's own personal right and economic interest. (*Flannery v. CHP, supra,* 61 Cal.App.4th at p. 637.)

[7] We recognize that *Flannery*'s alternative analysis is consistent with a narrow interpretation of "party." (*Flannery, supra,* 26 Cal.4th at p. 578 ["Even if we were to construe 'party' in [Government Code] section 12965 formally to designate a litigant only, that would not preclude our also declaring that *beneficial* ownership of section 12965 fees remains, absent contract, with the attorneys they are designed to compensate"].) However, we do not understand the court's inclusion of that alternate reasoning to mean that its broader construction of the term is not a holding to which we must give due respect. In fact, Justice Kennard's dissent is rooted in her objection to the majority's construction of "prevailing party" as

pursuant to section 1021.5 belong, absent an enforceable agreement to the contrary, to the attorneys. (See *Flannery*, at p. 590.)

### C. Meadow v. Superior Court

In support of its contention that RJP lacks standing to intervene and move for fees, respondent relies on the California Supreme Court decision in *Meadow v. Superior Court* (1963) 59 Cal.2d 610 [30 Cal.Rptr. 824, 381 P.2d 648] (*Meadow*), which in turn adopted the reasoning of *Marshank v. Superior Court* (1960) 180 Cal.App.2d 602 [4 Cal.Rptr. 593] (*Marshank*). Both cases are distinguishable.

*Meadow, supra,* 59 Cal.2d 610, and *Marshank, supra,* 180 Cal.App.2d 602, were marital dissolution proceedings in which former attorneys for a spouse sought to intervene to seek fees under statutory provisions authorizing courts to require a spouse to pay attorney fees necessary to allow the other spouse to maintain divorce or support actions. (Former Civ. Code, §§ 137.3, 137.5 (former title 1, repealed, Stats. 1969, ch. 1608, § 3, p. 3313).)[8] In *Meadow*, wife's counsel objected to a proposed property settlement agreement and wife discharged her counsel, reconciled with her husband, and sought dismissal of the divorce proceeding. (*Meadow, supra,* 59 Cal.2d at pp. 613–614.) Wife's former counsel sought leave to file a complaint in intervention in order to recover fees and costs for services rendered. (*Ibid.*) He alleged that the spouses and current counsel conspired to prevent him from collecting fees. (*Id.* at p. 615.) The Supreme Court denied intervention under section 387. (*Meadow,* at p. 617.) The court held that an attorney may intervene to resolve a dispute with a client over attorney fees only where the contract of employment gives the attorney "a specific present interest in the subject matter of the action." (*Id.* at p. 615, quoting *Marshank, supra,* 180 Cal.App.2d at p. 605.) The court reasoned that attorneys do not possess a "proprietary and direct" interest in fees awarded under former Civil Code sections 137.3 and 137.5. Fees " ' "are granted to the wife for her benefit and are not awarded to her attorney. . . . A wife's attorney has no separate equity in counsel fees awarded to her. His right thereto is derived from his client." ' " (*Meadow,* at

---

including a litigant's attorney. (*Flannery*, at pp. 591–592 (dis. opn. of Kennard, J.); see also *Graham v. DaimlerChrysler Corp., supra,* 34 Cal.4th at p. 570 [citing *Flannery* for its construction of "party"].)

[8] Former Civil Code section 137.3 authorized courts to require a spouse to pay "such amount as may be reasonably necessary for the cost of maintaining or defending [an action for divorce or for separate maintenance] and for attorney's fees." Former Civil Code section 137.5 permitted courts to order payment of fees directly to an attorney, in order to prevent the "injustice" of the client retaining those fees and depriving the attorney of compensation, "but the fee still is allowed to and for the benefit of the wife and the attorney's rights are not enlarged by" former section 137.5. ( *Weil v. Superior Court* (1950) 97 Cal.App.2d 373, 377 [217 P.2d 975].)

pp. 615–616, quoting *Marshank*, at p. 606.) The court expressly held that only the party has the right to request an award of attorney fees; an attorney may not move on his or her own behalf for an award of fees. (*Meadow*, at p. 616.) The attorney may only seek compensation in an independent action against the client, not by application to the court in which the present litigation is pending. (*Ibid.*)

California courts have followed *Meadow, supra,* 59 Cal.2d 610, and *Marshank, supra,* 180 Cal.App.2d 602, and rejected intervention or fee requests from attorneys in dissolution proceedings as well as in cases involving claims for fees arising out of contracts between attorneys and their clients. (See *Brown v. Superior Court* (2004) 116 Cal.App.4th 320, 329–330 [9 Cal.Rptr.3d 912] [contractual lien in licensing dispute]; *In re Marriage of Read* (2002) 97 Cal.App.4th 476, 481–482 [118 Cal.Rptr.2d 497] [divorce proceeding]; *In re Marriage of Tushinsky* (1988) 203 Cal.App.3d 136, 142 [249 Cal.Rptr. 611] [divorce proceeding]; *Bandy v. Mt. Diablo Unified Sch. Dist.* (1976) 56 Cal.App.3d 230, 234–235 [126 Cal.Rptr. 890] [contractual lien in personal injury case]; *Wong v. Superior Court* (1966) 246 Cal.App.2d 541, 545–546 [54 Cal.Rptr. 782] [divorce proceeding] (*Wong*); *Hendricks v. Superior Court* (1961) 197 Cal.App.2d 586, 588–589 [17 Cal.Rptr. 364] [contractual lien in personal injury case] (*Hendricks*).) The parties have not cited and we have not found any California court that has followed *Meadow* or *Marshank* in denying intervention to counsel seeking fees under section 1021.5, or any other provision providing for fee shifting in cases which vindicate fundamental public policies. (*Flannery, supra,* 26 Cal.4th at pp. 582–583.)

D. *Analysis of RJP's Motion to Intervene to Seek Fees Under Section 1021.5 in Light of* Flannery *and* Meadow

Respondents insist that *Meadow* stands for the blanket proposition that an attorney's interest in fees is indirect and cannot support intervention. In the marital dissolution context in which *Meadow* arose, a court award of attorney fees is a grant to the client for the client's benefit and the attorney's right to the award is indirect and derived from the attorney's employment by the client. (*Meadow, supra,* 59 Cal.2d 610, 615–616; *Wong, supra,* 246 Cal.App.2d at pp. 545–546.) The *Flannery* court responded to the dissent's argument that the court had previously " 'invalidated statutory awards of attorney fees when ordered paid directly to a party's *lawyer*' " (*Flannery, supra,* 26 Cal.4th at p. 578, fn. 3), and expressly distinguished fee awards in public interest litigation and awards in marital dissolution proceedings. The majority pointed out that "the Legislature, in authorizing divorce courts to 'require the husband to pay as alimony any money necessary to enable the wife to support herself or her children, or to prosecute or defend the action'

(former Civ. Code, § 137) plainly *intended* that the money be paid to the wife, rather than directly to her attorneys. No such plain intent obtains in this case." (*Flannery*, at p. 578, fn. 3.)[9]

■ Because the fee provision in the marital dissolution context is intended for the benefit of the spouses, the attorney's claim for fees arises from the attorney's employment relationship and it is the attorney who must enforce any contractual lien on the recovery through an independent action against the client. (See *Meadow, supra,* 59 Cal.2d at pp. 615–616; *Hendricks, supra,* 197 Cal.App.2d at pp. 588–589.) In contrast, RJP's interest in the fee award arises from section 1021.5 itself. Under *Flannery, supra,* 26 Cal.4th at page 590, the attorney is entitled to fees awarded *unless* an agreement specifies otherwise. By application of *Flannery*'s reasoning to the term "successful party" in section 1021.5, RJP's interest in a fee award will be directly and adversely affected if a final judgment issues prior to a motion for fees. RJP will forever lose the right to collect fees from defendant under section 1021.5. RJP has a sufficiently direct and immediate interest to permit intervention and a motion for an award of fees under section 1021.5.

■ The other requirements for intervention under section 387, subdivision (a) have also been satisfied. Intervention will not enlarge the issues in the litigation: Petitioners sought attorney fees in their petition and the propriety of granting intervention should be measured by the petition. (*People v. Superior Court (Good)* (1976) 17 Cal.3d 732, 736 [131 Cal.Rptr. 800, 552 P.2d 760].) The reasons for intervention outweigh any opposition by the present parties: Petitioners have not objected to intervention and respondents point to no prejudice from intervention, other than that they may be required to pay a fee award they otherwise would avoid, which is not the type of interest that can justify denying intervention. (Cf. *Truck Ins. Exchange v. Superior Court* (1997) 60 Cal.App.4th 342, 350–351 [70 Cal.Rptr.2d 255] [fact that intervention would frustrate plaintiffs' attempt to obtain default judgment does not justify denial of intervention].) Finally, respondents' contention that RJP's intervention request was untimely is without merit because RJP moved to intervene as soon as it became clear that their clients would not authorize a motion for fees.

Were we to interpret section 1021.5 as precluding intervention and an attorney's request for fees where the client declines to move for a fee award, we would diminish the certainty that attorneys who undertake public interest cases will receive reasonable compensation and dilute section 1021.5's

---

[9] The entitlement to fees in former Civil Code section 137 is the same entitlement involved in *Meadow, supra,* 59 Cal.2d 610. *Meadow* involved a claim for fees under former Civil Code section 137.3. Section 137.3 was enacted in 1951; substantially the same language was previously in former section 137. (Stats. 1951, ch. 1700, § 4, p. 3911.)

effectiveness at encouraging counsel to undertake litigation enforcing important public policies. (See *Flannery, supra,* 26 Cal.4th at p. 583.) Were we to adopt respondents' position it would also provide a windfall to the wrongdoing defendant, at the expense of the attorneys who labored in the public interest. (Cf. *id.* at pp. 585–586 [interpreting Government Code section 12965 to avoid windfall to client]; *MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1091 [36 Cal.Rptr.3d 650] ["California courts are justifiably reluctant to construe statutes to confer a windfall"]; *Lolley v. Campbell* (2002) 28 Cal.4th 367, 376 [121 Cal.Rptr.2d 571, 48 P.3d 1128] [interpreting fee provision in the Labor Code to avoid windfall to wrongdoing employer in form of exemption from paying attorney fees].) Finally, interpreting section 1021.5 as permitting intervention and a motion for fees by attorneys on their own behalf avoids wasteful collateral actions wherein attorneys sue their former clients because the clients' refusal to move for fees led to loss of an opportunity to seek a fee award under section 1021.5.

Without analysis, respondents state that were we to permit RJP to intervene and move for fees, we would undermine the principle that a client has the right to waive statutory fees as part of settlement. This case was not resolved by settlement; it was litigated to a judgment favorable to petitioners. Questions regarding how permitting attorneys to move for fees might affect the settlement process in future cases do not provide a basis to deny intervention in this case.[10]

In concluding that RJP may intervene and seek fees under section 1021.5, we disagree with the Ninth Circuit decision *Churchill Village v. General Electric* (9th Cir. 2004) 361 F.3d 566, 578–580 (*Churchill*), the only post-*Flannery* case on the issue. The *Churchill* court concluded that counsel to certain plaintiffs in a nationwide class action lacked standing to assert a fee claim under section 1021.5 because section 1021.5 "confers no legally enforceable interest on the attorneys themselves" (*Churchill,* at p. 579, fn. 12). The *Churchill* court's conclusion was based on a construction of "successful party" in section 1021.5 as including only the actual litigants. (*Churchill,* at pp. 578–579.) That narrow construction is inconsistent with the California Supreme Court's construction of the term "party" as used in

---

[10] We conclude that permissive intervention is appropriate in this case, where petitioners prevailed on the merits and did not object to their attorneys' motion to intervene. It may be that a trial court would be justified in denying intervention to an attorney seeking to move for fees when intervention would interfere with settlement on the merits. (See also *Evans, supra,* 475 U.S. at p. 728 & fn. 14.) Again, we need not address those issues.

Government Code section 12965 and, by analogy, in Code of Civil Procedure section 1021.5. (*Flannery, supra,* 26 Cal.4th at p. 578.)[11]

### E. Flannery's *Discussion of Federal Case Law*

In *Flannery,* the plaintiff, like respondent here, urged the court to follow federal cases holding that the right to seek, recover, and waive federal statutory fees resides with the client rather than the attorney. (*Flannery, supra,* 26 Cal.4th at p. 579.) The court emphasized that it was not bound by interpretations of federal fee statutes. (*Id.* at pp. 579–580.) The *Flannery* court then discussed two United States Supreme Court cases which held that only litigants, not their attorneys, are eligible for title 42 United States Code section 1988 fee awards as the "prevailing party."[12] (See *Evans, supra,* 475 U.S. at pp. 729–731; *Venegas v. Mitchell* (1990) 495 U.S. 82, 87 [109 L.Ed.2d 74, 110 S.Ct. 1679] (*Venegas*).) The court noted that neither *Evans* nor *Venegas* addressed the particular issue of " 'whether a party may receive or keep the proceeds of a fee award when she has neither agreed to pay her attorneys nor obtained from them a waiver of payment.' " (*Flannery,* at pp. 580–581.)

The court continued: "In any event, the high court's analysis of 42 United States Code section 1988 fee eligibility is not incompatible with the trial

---

[11] We disagree with the *Churchill* court's reading of *Serrano v. Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303] (*Serrano III*), describing factors to be considered in deciding whether to augment a section 1021.5 fee award. The *Serrano III* case involved successful challenges to the California public school financing system. Public Advocates, one of the organizations whose attorneys litigated the case, sought review of the total fee award. The *Serrano III* court held that in deciding whether to augment the lodestar award the trial court properly considered "the fact that the monies awarded would inure not to the individual benefit of the attorneys involved but the organizations by which they are employed." (*Id.* at p. 49.) As we understand it, the import of that language is not that section 1021.5 fee awards inure to the benefit of clients as a general matter. Rather, it means that, where the attorneys are employees of a public interest organization such as Public Advocates, which will actually receive the fees, a higher award may be justified. (See *Thayer v. Wells Fargo Bank* (2001) 92 Cal.App.4th 819, 834 [112 Cal.Rptr.2d 284] [interpreting *Serrano III* in a similar manner].) The *Churchill* court's quotation of this language is misleading because it changes the word "organizations" to "clients": " 'Monies awarded . . . inure not to the benefit of the attorneys involved but the [clients] by which they are employed.' " (*Churchill, supra,* 361 F.3d at p. 579.) We disagree that the *Serrano III* decision supports the proposition that section 1021.5 fees inure to the benefit of clients. Not only was that issue not before the *Serrano III* court, but that proposition is at odds with the *Flannery* court's holding that public interest fee awards inure to the benefit of the attorneys and its discussion of the section 1021.5 precedents, which itself does not interpret the *Serrano III* decision as the *Churchill* court does. (*Flannery, supra,* 26 Cal.4th at p. 582.)

[12] Title 42 United States Code section 1988 states in pertinent part that in actions under specified sections "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

court's ruling that defendants [attorneys] are entitled to the proceeds of the fee award that plaintiff concedes she authorized defendants to seek. As the Ninth Circuit Court of Appeals explained in [*U.S. v. Jerry M. Lewis Truck Parts & Equipment* (9th Cir. 1996) (*Virani*)] 89 F.3d 574, *Evans*[, *supra*, 475 U.S. 717] stands for the proposition that, under 42 United States Code section 1988, only a plaintiff has the power to demand that a defendant pay the fees of the plaintiff's attorney, and 'the defendant's liability will only arise if that power is exercised' (*Virani, supra,* at p. 577). But once the client's power to demand attorney fees is exercised, the attorney's right to receive them 'come[s] into being.' (*Ibid.*) Accordingly, and as pertinent for our purposes, '[t]he plaintiff has no power to confer the fee upon himself.' (*Ibid.*[)]" (*Flannery, supra,* 26 Cal.4th at p. 581.) Respondents argue that by this statement *Flannery* endorsed the federal rule that only litigants may request an award of fees.

The *Flannery* court distinguished *Evans, supra,* 475 U.S. 717 and its progeny by explaining that even under federal law, where only a party is eligible for a 42 United States Code section 1988 fee award, the attorney still may have a right to those fees once awarded by a court. (*Flannery, supra,* 26 Cal.4th at p. 581.) *Flannery* was neither confronted with nor considered the issue before us: May attorneys intervene and request a section 1021.5 fee award given that the statute authorizes awards to attorneys and public interest fee awards belong to attorneys in the first instance?

The *Virani* rule cannot be the law in California after *Flannery. Virani*'s holding that only a litigant may request an award of fees is based on the *Evans* and *Venegas* holdings that 42 United States Code section 1988 fees belong to the litigants and not their attorneys. (*Virani, supra,* 89 F.3d at p. 577; *Evans, supra,* 475 U.S. at pp. 730–732, 743; *Venegas, supra,* 495 U.S. at pp. 87–88.) In marked contrast, the *Flannery* court held that fees awarded belong to the attorneys in the first instance. (*Flannery, supra,* 26 Cal.4th at pp. 578, 590.)

Particularly illustrative of the difference between California and federal law is the decision in *Gilbrook v. City of Westminster* (9th Cir. 1999) 177 F.3d 839, 872–875, which relies on *Evans, supra,* 475 U.S. 717, and *Venegas, supra,* 495 U.S. 82, to reach a conclusion *directly opposite* the conclusion in *Flannery, supra,* 26 Cal.4th 572. There the Ninth Circuit held that because 42 United States Code section 1988's reference to "prevailing party" authorizes an award only to a client and not its counsel, fee awards must be made directly to the *litigant,* "with the ultimate disposition of the award dependent on the contract between the lawyer and the client." (*Gilbrook,* at p. 875; see also *Benitez v. Collazo-Collazo* (1st Cir. 1989) 888 F.2d 930, 933 [award of 42 U.S.C. § 1988 fees belongs initially to the prevailing litigant, not its attorney].)

*Flannery*'s discussion of federal law cannot be read as an endorsement of the federal rule that only a litigant may request an award of fees because that rule is based on a fundamentally different interpretation of the phrase "prevailing party" as used in the federal attorney fee statutes. (*Flannery, supra,* 26 Cal.4th 572.) That is, *Flannery* expansively construes the phrase as used in Government Code section 12965 to include a litigant's counsel while *Evans, supra,* 475 U.S. 717, and *Venegas* narrowly construe the phrase as used in 42 United States Code section 1988 to include the litigants alone.[13] *Flannery* does not discuss how its interpretation of Government Code section 12965 might affect the analysis in a future case considering an attorney's request to intervene to seek a public interest fee award under California law. Faced now with that issue, we extend the reasoning of *Flannery* to a logical conclusion in the analogous context of a Code of Civil Procedure section 1021.5 fee request and hold that RJP has standing to intervene and file a motion for fees.

### III. *Entitlement to Fees Under Section 1021.5*

RJP urges this court to decide, in the first instance, whether it is entitled to an award of fees under section 1021.5. (*Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 427 [253 Cal.Rptr. 426, 764 P.2d 278].) Because the request for fees is based entirely on the success obtained by petitioners on appeal, we are better equipped than the trial court to decide whether an award of fees is appropriate. (See *Wilkerson v. City of Placentia* (1981) 118 Cal.App.3d 435, 445 [173 Cal.Rptr. 294] ["where the entire basis for the decision . . . is what we have done in this opinion, we should make the decision that it qualifies as a case for granting of fees"]; accord, *Laurel Heights,* at p. 427.)

■ An award of attorney fees is proper under section 1021.5 if (1) petitioners' action resulted in the enforcement of an important right affecting the public interest, (2) a significant benefit was conferred on the general public or a large class of persons, and (3) the burden of private enforcement was such as to make the award appropriate. (*Woodland Hills, supra,* 23 Cal.3d at p. 935.)[14]

Our decision in *Lindelli I* resolves the first two issues. There, San Anselmo moved to dismiss the appeal as moot because petitioners conceded they were

---

[13] The *Churchill* decision, which does interpret *Flannery, supra,* 26 Cal.4th 572, as endorsing the rule that only a litigant may request an award of fees, fails to recognize the different constructions of the phrase "prevailing party" in the state and federal attorney fee provisions. (*Churchill, supra,* 361 F.3d at p. 579, fn. 12.)

[14] Section 1021.5, which requires that "such fees should not in the interest of justice be paid out of the recovery, if any," is inapplicable because petitioners' action did not produce a monetary recovery. (*Woodland Hills, supra,* 23 Cal.3d at p. 934.)

no longer seeking as relief removal of the interim provider, Marin Sanitary Service. (*Lindelli I, supra,* 111 Cal.App.4th at p. 1104.) We decided an exception to mootness applied because "[t]he election law issue presented in this case is one of broad importance, capable of recurring, and likely otherwise to escape review." (*Ibid.*) We explained that under the California Constitution, the people have the right to approve or reject measures passed by a legislative body through the referendum process, and the ability to stay legislation pending a vote is "[a]n essential component of the referendum power." (*Lindelli I,* at pp. 1108–1109.) We conclude that petitioners' ultimate success in obtaining a declaration that the interim contract violated the stay provisions of Election Code section 9241 resulted in the enforcement of an important right and conferred a significant benefit on the general public. (See *Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 318 [193 Cal.Rptr. 900, 667 P.2d 704] [" 'The determination that the public policy vindicated is one of constitutional stature . . . establishes the first of the . . . elements requisite to the award (i.e., the relative societal importance of the public policy vindicated)' "]; see also *Woodland Hills, supra,* 23 Cal.3d at p. 939.)

Respondents argue that petitioner North Bay's financial stake in obtaining San Anselmo's contract for waste management services means that the cost of the litigation was not out of proportion to its individual stake. (*Woodland Hills, supra,* 23 Cal.3d at p. 941.) Because petitioners did not seek removal of Marin Sanitary Service as the interim provider, the appeal provided little potential individual benefit to petitioners. The necessity and financial burden of private enforcement, as related to the appeal in *Lindelli I,* make an award appropriate. (See *Hammond v. Agran* (2002) 99 Cal.App.4th 115, 132 [120 Cal.Rptr.2d 646]; see also *Lyons v. Chinese Hospital Assn.* (2006) 136 Cal.App.4th 1331, 1354 [39 Cal.Rptr.3d 550].)

RJP is entitled to a reasonable fee award for time spent on the appeal in *Lindelli I* and for time spent on fee–related proceedings on remand and on this appeal. (See *Lyons v. Chinese Hospital Assn., supra,* 136 Cal.App.4th at p. 1356.) We decline RJP's invitation to determine the amount of fees to which they are entitled. That is a factual issue more properly considered in the first instance by the trial court on remand. (*Ibid.*)[15]

---

[15] The trial court should consider RJP's request for fees for time spent on the unsuccessful petition for writ of mandate and request for a stay filed in this court. (See *Children's Hospital and Medical Center v. Bontá* (2002) 97 Cal.App.4th 740, 780–781 [118 Cal.Rptr.2d 629] [" 'a trial court may, in its discretion, determine that time reasonably expended on an action includes time spent on other separate but closely related court proceedings' "].)

## DISPOSITION

The judgment is reversed and the case remanded to the trial court with directions to grant RJP's motion to intervene and motion for attorney fees under section 1021.5 and to award a reasonable fee consistent with this decision.

Jones, P. J., and Simons, J., concurred.