Filed 3/14/16  Bazua v. City of Montebello CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JOSE BAZUA, | B257628 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC488330) |
| v. | |
| CITY OF MONTEBELLO, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michelle R. Rosenblatt, Judge.  Reversed with directions.

Alexander Krakow + Glick, J. Bernard Alexander III and Tracy L. Fehr for Plaintiff and Appellant.

Liebert Cassidy Whitmore, Geoffrey S. Sheldon and Jennifer M. Rosner for Defendant and Respondent.

_____

# INTRODUCTION

Jose Bazua sued his former employer, the City of Montebello, alleging that the city fired him in retaliation for complaining about the city's misuse of federal housing funds provided by the United States Department of Housing and Urban Development (HUD). Bazua alleged causes of action for violation of Labor Code section 1102.5, which prohibits an employer from retaliating against an employee for engaging in certain whistleblower activities, and for defamation, and sought penalties under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.). The trial court sustained Montebello's demurrer to Bazua's Labor Code section 1102.5 cause of action without leave to amend because the court ruled Bazua had failed to exhaust his administrative and judicial remedies, granted Montebello's motion to strike Bazua's PAGA claim, and later granted Montebello's motion for summary judgment on the remaining defamation cause of action and for summary adjudication on particular issues. Bazua challenges each of these rulings.

We conclude that Montebello's post-termination appeal procedure was an inadequate administrative remedy because it failed to provide a clearly defined procedure for resolving disputes, including an evidentiary hearing. Therefore, Bazua did not have to exhaust the procedure, and the exhaustion of judicial remedies doctrine did not apply because there was no quasi-judicial administrative decision for Bazua to challenge in court. We also conclude that, although the trial court did not err in striking Bazua's PAGA claim, the court erred in granting Montebello's motion for summary judgment on Bazua's defamation cause of action and for summary adjudication of issues.

# FACTUAL AND PROCEDURAL BACKGROUND

## A.     *Factual Background*

### 1.     *Bazua's Employment With Montebello*

According to the allegations of the operative first amended complaint, which we accept as true for purposes of reviewing the trial court's order sustaining Montebello's demurrer,[1] Bazua began working for Montebello as an administrative analyst in 1996. He rose through several promotions to become the Acting Director of Economic Development in July 2008, and the Director of Economic Development in March 2009. Bazua then began his fall.  In January 2010 Montebello demoted Bazua to Economic Development Manager.  On January 6, 2011 Montebello placed Bazua on administrative leave, and on September 15, 2011 Montebello terminated his employment.

### 2.     *The Redevelopment Project and HUD Funds*

On March 12, 2008 Montebello entered into an Exclusive Negotiation Agreement with Ku and Associates, a developer, for a project.  On May 22, 2008 Michael Huntley, Montebello's Director of Community Development, directed the city attorney, Arnold Alvarez-Glasman of Alvarez-Glasman & Colvin, to prepare a draft Owner Participation Agreement (OPA).  On June 25, 2008 the city council approved a resolution designating $1.3 million in federal HOME program funds for the project and authorizing an escrow account to hold the funds.[2]  On July 2, 2008 Montebello issued a check for $1.3 million

---

[1]     *Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 528.

[2]     The HOME Investment Partnership Act (HOME), Title 42 United States Code section 12701 et seq., "provides federal housing funds directly to participating jurisdictions.  The jurisdictions disburse those funds in the form of loans and grants 'to provide incentives to develop and support affordable rental housing and home ownership affordability.'"  (*Oti Kaga, Inc. v. South Dakota Housing Development Authority* (8th Cir. 2003) 342 F.3d 871, 875, quoting 42 U.S.C. § 12742(a)(1).)

in HUD funds to the escrow account. According to Bazua, this disbursement of funds violated HUD regulations because it occurred before there was a signed OPA between Montebello and Ku and Associates.

After he became Acting Director of Economic Development in July 2008, Bazua discovered the improper disbursement of HUD funds and reported the matter to the city administrator and to Alvarez-Glasman. Alvarez-Glasman decided to prepare something called a HOME Program Loan Agreement in lieu of an OPA.

On February 10, 2009 Montebello entered into a HOME Program Loan Agreement with Ku and Associates. Alvarez-Glasman and Matthew Gorman, an attorney in Alvarez-Glasman's law firm, advised Bazua that the agreement was an acceptable substitute for an OPA. Another lawyer in Alvarez-Glasman's law firm, Roger Colvin, prepared and advised Bazua "regarding creation of the OPA."

In January 2010 the Economic Development Department became a division of Community Development under Huntley as Director of Planning and Development. This change placed Bazua under Huntley.


3.      *The Inspector General's Audit and the Internal Investigation*

In July 2010 HUD's Office of Inspector General conducted an audit and discovered that someone in Montebello had given HUD an OPA dated March 14, 2008 with fraudulent signatures. Montebello accused Bazua of creating the fraudulent OPA. On January 6, 2011 Montebello placed Bazua on administrative leave. Bazua subsequently filed a complaint with the California State Controller claiming that Huntley was responsible for the alleged misuse of redevelopment funds.

Montebello hired a private investigative firm, RCS Investigations and Consulting LLC, to investigate the fraud. On January 19, 2011 RCS interviewed Bazua about the release of the $1.3 million in HUD funds and the HUD investigation. Bazua provided RCS with substantial documentation, including documents drafted by Alvarez-Glasman and Gorman and memoranda among various Montebello officials. RCS presented its conclusions to Montebello in a written report.

4

4. *Montebello's Pre-Termination Hearings and the Termination of Bazua's Employment*

On May 31, 2011 Montebello sent Bazua a notice of intent to terminate his employment, signed by Huntley. Montebello accused Bazua, among other things, of falsifying and concealing the fraudulent OPA and other records, willfully concealing information, misappropriation, and incompetence, all of which, according to Bazua, occurred while Huntley was in charge. The notice informed Bazua of his right to respond orally before the city administrator's designee, David Biggs. On July 11, 2011 Bazua appeared before Biggs and gave Biggs the documents he had given to RCS.

On September 8, 2011 Montebello sent Bazua an amended notice of intent to terminate, also signed by Huntley. The amended notice accused Bazua of 31 additional violations. On September 15, 2011 Bazua again appeared before Biggs and again submitted documents. Promptly after the second hearing Biggs notified Bazua of the termination of his employment.

5. *Montebello's Proposed Post-Termination Hearing*

Montebello's Administrative Policy V-B-40, which applied to Bazua, provided for a post-termination review by the city administrator. This policy stated, in relevant part: "If discipline is imposed against any unclassified management employee, the exclusive method of review of same shall be as follows: Such employee may, within ten (10) days of the notification of the imposition of such discipline, request, in writing, a review of the action by the City Administrator. The City Administrator shall review such facts as he determines are appropriate and shall advise such management employee, informally, of the result of his review and his decision. The decision of the City Administrator shall be final and conclusive."

On September 23, 2011 Bazua requested a hearing to review the decision to terminate his employment. He also requested a description of the procedure and format of the hearing.

5

On September 27, 2011 Montebello's Director of Human Resources informed Bazua that Colvin would serve as the "judge" in the hearing. Bazua objected, stating that Colvin was Alvarez-Glasman's law partner and had advised Bazua regarding the creation of an OPA. Bazua stated that Colvin could not act as a neutral factfinder, and that the proposed hearing was inconsistent with Administrative Policy V-B-40.

On October 31, 2011 the Director of Human Resources responded to Bazua stating, "Administrative Policy V-B-40 does not provide specific details about an unclassified employee's right to an evidentiary hearing if discipline is imposed." The letter also stated that, consistent with its past practice, Montebello would provide Bazua an evidentiary hearing that included the opportunity to cross-examine witnesses and Montebello would bear the burden of proof to justify his termination. Bazua declined to participate in the proposed hearing because, among other reasons, the newly-proposed procedure did not appear in any written policy, Bazua's participation in such a hearing would been futile, and the HUD fraud allegations permeated the entire city government. Bazua filed this action on July 12, 2012.

B. *Trial Court Proceedings*

1. *Bazua's First Amended Complaint and Montebello's Demurrer and Motion To Strike*

Bazua's first amended complaint against Montebello alleged causes of action for violation of Labor Code section 1102.5, which included a claim for monetary penalties under PAGA, and defamation.[3] Bazua alleged that, before he became Acting Director of

---

[3] The trial court had sustained Montebello's demurrer to the Labor Code section 1102.5 cause of action in Bazua's original complaint with leave to amend and overruled Montebello's demurrer to Bazua's defamation cause of action. The court had also granted Montebello's motion to strike the PAGA claim in Bazua's original complaint, with leave to amend to allege a proper representative PAGA claim on behalf of Bazua and other current or former employees.

6

Economic Development, Montebello improperly disbursed HUD funds without the required OPA. Bazua alleged that upon discovering this impropriety he promptly notified the city administrator and the city attorney. Bazua alleged that Montebello terminated his employment in retaliation for complaining about the city's mishandling and improper use of HUD funds and Huntley's improper use of redevelopment funds. Bazua also alleged that Montebello had made false accusations and other defamatory statements about him to third parties and to the public.

Bazua alleged that the post-termination evidentiary hearing proposed by the Director of Human Resources on October 31, 2011 was not an established procedure, was created solely for Bazua's termination, and was patently inadequate. Bazua also alleged that it would have been futile for him to participate in the proposed hearing because he had already participated in two prior pre-termination hearings before Biggs and had provided evidence to Montebello's investigators prior to his termination, Colvin was biased, and Huntley had mishandled the HUD funds and initiated the biased investigation of Bazua. Bazua alleged that Montebello's entire city administration was biased against him and could not provide a fair and impartial hearing.

Montebello demurred to the first amended complaint, arguing that by abandoning the administrative appeal of his termination Bazua had failed to exhaust his administrative remedies. Montebello also argued that Bazua had failed to exhaust his judicial remedies because he never challenged the city's procedures or decision by filing a petition for a writ of administrative mandamus. Montebello also moved to strike Bazua's PAGA claim, arguing that Bazua had not alleged a representative PAGA claim on behalf of himself and other current or former employees.

Bazua argued in opposition to the demurrer that it would have been futile for him to exhaust the administrative remedy offered to him for several reasons, including that Colvin was "the attorney who advised [Bazua] to engage in the conduct which caused [his] termination" and "was clearly a biased decisionmaker." He also argued that the administrative remedy provided by Administrative Policy V-B-40 was unclear and inadequate.

7

The trial court sustained Montebello's demurrer to Bazua's cause of action for violation of Labor Code section 1102.5 without leave to amend, based on Bazua's failure to exhaust his administrative and judicial remedies. The court also granted Montebello's motion to strike the PAGA claim, ruling that Bazua was seeking only individual relief and had failed to allege any basis for a representative claim, as required by PAGA.

### 2. *Montebello's Motion for Summary Judgment or Summary Adjudication*

Montebello filed a motion for summary judgment on Bazua's remaining cause of action for defamation, arguing that Bazua's failure to exhaust his administrative remedies barred his defamation cause of action. Montebello also moved in the alternative for summary adjudication of issues with respect to 11 specific statements Bazua claimed were defamatory, labeling them "Plaintiff's Alleged Defamatory Statement Number[s]" 1 through 11. Montebello argued that there was no evidence of any specific defamatory statement by a city employee (for Alleged Defamatory Statement Nos. 2, 3, 4, 5, 6, and 7), statements made by Bazua to third parties were not actionable (Alleged Defamatory Statement Nos. 9 and 10), one of the statements was not published to third parties (Alleged Defamatory Statement No. 11), Bazua did not suffer any injury, the alleged defamatory statements were protected by the common interest privilege, and Montebello was immune from liability under Government Code sections 815.2, 818.8, and 822.2.

Bazua argued in opposition to the motion that the exhaustion requirement did not apply to his defamation cause of action and the alleged defamatory statements were sufficiently specific. He also argued that Montebello was responsible for any foreseeable repetition of the defamatory statements to third parties, including Bazua's repetition of the statements in employment interviews. Bazua argued that he did not have to prove any economic injury and that, in any event, he had suffered economic injury in the form of his inability to find new employment, as well as mental anguish. Bazua also argued that the defamatory statements were not privileged and Montebello was not immune from liability.

The trial court granted Montebello's motion for summary judgment. The court ruled that Bazua's failure to exhaust his administrative remedies by challenging his termination in a post-termination hearing precluded any claim, including his defamation claim, based on the merits of his termination or the reasons for his termination. The court stated that, in order "to prove his defamation claim, [Bazua] would necessarily have to challenge his termination," and that had he "utilized his administrative remedies and proved his termination wrongful, he may pursue a defamation claim for damages attributed to statements stemming from the wrongful reason for his termination." The court concluded that, by "foregoing the procedures set forth in [Administrative Policy] V-B-40, [Bazua] has no basis for challenging the alleged statements."

The court also ruled on Montebello's motion for summary adjudication of issues with respect to particular statements, agreeing with some of Montebello's arguments and rejecting others. The court concluded that Montebello was entitled to summary adjudication of issues with respect to four of the 11 allegedly defamatory statements. The court also ruled that Bazua could not prove injury or malice because he had not exhausted his administrative remedies, that the common interest privilege applied to some but not all of the statements, and that Montebello was not entitled to governmental immunity.

On April 29, 2014 the trial court entered a judgment in favor of Montebello. Bazua timely appealed.

## DISCUSSION

A.    *The Trial Court Erred by Sustaining the Demurrer Based on Failure To Exhaust Administrative and Judicial Remedies*

1.    *Standard of Review*

"When reviewing an order sustaining a demurrer, we employ the de novo standard of review. [Citation.] "'A demurrer tests the sufficiency of the complaint as a matter of

9

law; as such, it raises only a question of law." [Citation.] "'The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed "if any one of the several grounds of demurrer is well taken. [Citations.]"'""" (*Lewis v. Safeway, Inc.* (2015) 235 Cal.App.4th 385, 390-391.) "'We apply a de novo standard of review to the legal question of whether the doctrine of exhaustion of administrative remedies applies in a given case.'" (*Defend Our Waterfront v. California State Lands Commission* (2015) 240 Cal.App.4th 570, 580; see *Coastside Fishing Club v. California Fish and Game Commission* (2013) 215 Cal.App.4th 397, 414 ["[w]hether the doctrine of exhaustion of administrative remedies applies in a given case is a legal question that we review de novo"].)

>    2.      *Bazua's Labor Code Section 1102.5 Claim Is Not Barred by Failure To Exhaust Administrative Remedies*

Where an applicable statute, ordinance, or regulation provides an adequate administrative remedy, a party must exhaust it before seeking judicial relief. (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1080; see *American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 291.) "Exhaustion requires 'a full presentation to the administrative agency upon all issues of the case and at all prescribed stages of the administrative proceedings.' [Citation.] "'The exhaustion doctrine is principally grounded on concerns favoring administrative autonomy (i.e., courts should not interfere with an agency determination until the agency has reached a final decision) and judicial efficiency (i.e., overworked courts should decline to intervene in an administrative dispute unless absolutely necessary).'" (*City of San Jose v. Operating Engineers Local Union No. 3* (2010) 49 Cal.4th 597, 609 (*San Jose*); see *AIDS Healthcare Foundation v. State Department of Health Care Services* (2015) 241 Cal.App.4th 1327, 1337.)

10

The exhaustion requirement is subject to exceptions, one of which is where the administrative remedy is inadequate.[4] (*San Jose*, *supra*, 49 Cal.4th at p. 609.) The statute, ordinance, regulation, or other written policy establishing an administrative remedy must provide clearly defined procedures for the submission, evaluation, and resolution of disputes. (*City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 236-237 (*City of Oakland*) [city charter provision]; *Unfair Fire Tax Com. v. City of Oakland* (2006) 136 Cal.App.4th 1424, 1429-1430 (*Unfair Fire Tax Com.*) [ordinance].) A policy that only provides for the submission of disputes to a decisionmaker without stating whether the aggrieved party is entitled to an evidentiary hearing or the standard for reviewing the prior decision is inadequate. (*City of Oakland*, *supra*, at p. 237; *Unfair Fire Tax Com.*, *supra*, at p. 1430.) An administrative remedy also "must include a fair right to be heard on an issue and to have a decision rendered through a fair and sufficient process." (*Payne v. Anaheim Memorial Medical Center, Inc.* (2005) 130 Cal.App.4th 729, 739-740 (*Payne*).) An administrative remedy that fails to satisfy these requirements is inadequate and need not be exhausted. (*City of Oakland*, *supra*, at pp. 236-237; *Unfair Fire Tax Com.*, *supra*, at p. 1430; *Payne*, *supra*, at p. 744.)

Administrative Policy V-B-40 stated that the "exclusive method of review" of discipline imposed on an unclassified management employee such as Bazua was by submitting a request for review by the city administrator. The policy stated that the city administrator "shall review such facts as he determines are appropriate and shall advise such management employee, informally, of the result of his review and his decision." The written policy did not provide for an evidentiary hearing, or even any hearing, made no provision for the submission of evidence or argument, and was silent on the standard by which the city administrator would decide the matter. It also only required an

---

[4] Labor Code section 244, subdivision (a), enacted in 2013 (Stats. 2013, ch. 577, § 4), provides, "An individual is not required to exhaust administrative remedies in order to bring a civil action under any provision of this code, unless that section under which the action is brought expressly requires exhaustion of an administrative remedy. . . ." Bazua does not argue that this provision applies to his action.

11

informal advisement of the decision. Because the policy lacked clearly defined procedures for the submission, evaluation, and resolution of disputes, it was an inadequate administrative remedy. (See *City of Oakland*, *supra*, 224 Cal.App.4th at pp. 236-237; *Ahmadi-Kashani v. Regents of University of California* (2008) 159 Cal.App.4th 449, 458 (*Ahmadi-Kashani*) [grievance procedure without a right to an evidentiary hearing before a neutral decisionmaker was inadequate and need not be exhausted]; *Unfair Fire Tax Com.*, *supra*, 136 Cal.App.4th at pp. 1429-1430 [exhaustion of "nebulous" administrative procedure is not required]; *Life Care Centers of America v. CalOptima* (2005) 133 Cal.App.4th 1169, 1177 ["[t]o constitute an internal or administrative remedy requiring exhaustion before filing suit, '"[t]here must be 'clearly defined machinery' for the submission, evaluation and resolution of complaints by aggrieved parties"'"].)[5] The informal internal grievance procedure of Administrative Policy V-B-40 was also inadequate to resolve the complex issues presented in this kind of dispute. (See *Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328, 342-343 ["[a] procedure which provides merely for the submission of a grievance form, without the taking of testimony, the submission of legal briefs, or resolution by an impartial finder of fact is manifestly inadequate to handle disputes of the crucial and complex nature"]; accord, *Payne*, *supra*, 130 Cal.App.4th at pp. 741-742.)

Because the post-termination administrative remedy was inadequate, Bazua was not required to exhaust it. Therefore, the trial court erred by sustaining Montebello's demurrer to the Labor Code section 1102.5 cause of action based on the failure to exhaust administrative remedies.

---

[5] The written policy must provide specific procedures that the administrative body is required to follow. (See *City of Oakland*, *supra*, 224 Cal.App.4th at p. 236; *Lindelli v. Town of Anselmo* (2003) 111 Cal.App.4th 1099, 1106 (*Lindelli*).) Montebello's after-the-fact proposal to provide an evidentiary hearing with Colvin as the "judge" was contrary to the "exclusive method of review" by the city administrator outlined in Administrative Policy V-B-40 and could not cure the defects in the written policy.

12

### 3. *Bazua's Labor Code Section 1102.5 Claim Is Not Barred by Failure To Exhaust Judicial Remedies*

The doctrine of exhaustion of judicial remedies provides that a party to a quasi-judicial proceeding who fails to challenge adverse findings made in that proceeding by filing a petition for writ of mandate in court is bound by those findings in a later civil action. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 69-70; *Y.K.A. Industries, Inc. v. Redevelopment Agency of City of San Jose* (2009) 174 Cal.App.4th 339, 355-356 (*Y.K.A.*).) "Exhaustion of *judicial* remedies . . . is necessary to avoid giving binding 'effect to the administrative agency's decision, because that decision has achieved finality due to the aggrieved party's failure to pursue the exclusive *judicial* remedy for reviewing administrative action.'" (*Johnson v. City of Loma Linda*, *supra*, at p. 70.)

Bazua did not and did not need to participate in the proposed post-termination hearing, so there were no findings for him to challenge by filing a petition for writ of administrative mandamus. Absent any administrative findings, Bazua had no judicial remedies to exhaust. Therefore, the exhaustion of judicial remedies doctrine is inapplicable. (See *McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 113 ["[i]n the absence of quasi-judicial proceedings, [plaintiff] was not required to seek judicial relief to set aside any findings or bear the consequences of their binding effect"]; *Y.K.A.*, *supra*, 174 Cal.App.4th at p. 361 ["[t]he predicates to the doctrine's application are therefore the existence or availability of an administrative process possessing a judicial character and a quasi-judicial adjudication, finding, or action adverse to the plaintiff produced therefrom"]; *Ahmadi-Kashani*, *supra*, 159 Cal.App.4th at p. 459 ["[b]ecause Ahmadi-Kashani never participated in a quasi-judicial hearing as part of her aborted grievance process, there was no decision rendered that would be entitled to preclusive effect in a subsequent court proceeding"].)

B.     *The Trial Court Properly Granted Montebello's Motion To Strike Bazua's PAGA Claim*

"Under Code of Civil Procedure section 436, the court "may . . . at any time in its discretion, and upon terms it deems proper: [¶]. . . [¶] (b) Strike out all or any part of any pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court." (Code Civ. Proc., § 436, subd. (b).)  The trial court's ruling on a motion to strike a pleading under Code of Civil Procedure section 436 generally is reviewed for abuse of discretion.  [Citations]  However, the proper interpretation of a statute, and its application to undisputed facts, presents a question of law subject to de novo review." (*Cal-Western Business Services, Inc. v. Corning Capital Group* (2013) 221 Cal.App.4th 304, 309.)  A motion to strike is an appropriate method for challenging a PAGA claim.  (See *USS-POSCO Industries v. Case* (2016) 244 Cal.App.4th 197, 222 [defective PAGA claim is "subject to a demurrer or motion to strike"]; *Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 385 ["[t]he appropriate procedural device for challenging a portion of a cause of action seeking an improper remedy is a motion to strike"].)

PAGA authorizes an "aggrieved employee" to file a civil action "on behalf of himself or herself and other current or former employees" and seek civil penalties for violations.  (Lab. Code, § 2699, subd. (a).)  Civil penalties imposed under PAGA are distributed 75 percent to the Labor and Workforce Development Agency and 25 percent to the aggrieved employees.  (*Id.*, subd. (i).)  "The act's declared purpose is to supplement enforcement actions by public agencies, which lack adequate resources to bring all such actions themselves.  (Stats. 2003, ch. 906, § 1 [Legislature's findings and declarations].)  In a PAGA claim the employee plaintiff represents the same legal right and interest as state labor law enforcement agencies—namely, recovery of civil penalties that otherwise would have been assessed and collected by the Labor Workforce Development Agency." (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 986.)

California courts construing Labor Code section 2699, subdivision (a), have concluded that an aggrieved employee suing under PAGA must bring the claim as a

14

representative action on behalf of "himself or herself *and* other current or former employees" (Lab. Code, § 2699, subd. (a), italics added).[6]  (See *Rope v. Auto-Chlor System of Washington, Inc.* (2013) 220 Cal.App.4th 635, 651, fn. 7 ["[s]uits brought under PAGA must be representative actions"]; *Reyes v. Macy's, Inc.* (2011) 202 Cal.App.4th 1119, 1123-1124 ["[a] plaintiff asserting a PAGA claim may not bring the claim simply on his or her own behalf but must bring it as a representative action and include 'other current or former employees'"].)  Bazua argues that *Reyes* "did not hold that a single plaintiff's PAGA claims must be dismissed," but instead "held that the PAGA claim was not an individual claim and thus could not be compelled to arbitration with the rest of Reyes' case."  Bazua, however, does not explain why the language in *Reyes* does not apply to his PAGA claim, and he does not even address *Rope*.  He asserts that he alleged he was suing on behalf of himself and other current or former employees, but he has not explained how the allegations in his complaint concerning his termination provide a factual basis for a violation of Labor Code section 1102.5 with respect to any other employees.  Bazua's lawsuit is about his personal experience working for Montebello and his personal grievances against the city.  Bazua is not bringing this action or seeking to recover anything on behalf of anyone but himself.

C.      *The Trial Court Erred by Granting Summary Judgment Based on Failure To Exhaust Administrative Remedies*

In granting Montebello's motion for summary judgment on Bazua's sole remaining cause of action for defamation, the trial court stated that Bazua's failure to exhaust his administrative remedies precluded any claim that depended on proving his termination was wrongful.  The court ruled that, because the defamation cause of action

---

[6]      Labor Code 2699, subdivision (g)(1), also states that an aggrieved employee may recover a monetary penalty in a civil action "filed on behalf of himself or herself *and* other current or former employees against whom one or more of the alleged violations was committed."  (Italics added.)

15

challenged the stated reasons for Bazua's termination, Bazua's failure to exhaust his administrative remedies precluded his defamation cause of action in its entirety. Because the exhaustion of administrative remedies doctrine is inapplicable, however, the basis for the trial court's ruling no longer exists and the court's ruling must be reversed.

Moreover, the exhaustion of administrative remedies doctrine applies only where there is an administrative remedy available to address the particular grievance. (See *Payne*, *supra*, 130 Cal.App.4th at pp. 743-744 [plaintiff was not required to exhaust an internal grievance procedure because his specific grievance was not within the scope of the hearing offered]; *Lindelli*, *supra*, 111 Cal.App.4th at p. 1105 ["'the doctrine [of exhaustion of administrative remedies] does not apply in those situations where no specific administrative remedies are available to the plaintiff'"].) Montebello's Administrative Policy V-B-40 only provided for the review of an imposition of discipline. Defamation is not discipline, and Policy V-B-40 provided no remedy for defamatory statements. Montebello has not cited any authority for the proposition that a failure to exhaust an administrative remedy, which does not result in factual findings that might have collateral estoppel or other preclusive effect, precludes an employee from pursuing a defamation cause of action that is not within the scope of grievances for which the employer has provided the administrative remedy. Bazua's failure to exhaust an administrative remedy he did not have for his defamation claim does not preclude him from pursuing that claim in court.

*Johnson v. Hydraulic Research & Mfg. Co.* (1977) 70 Cal.App.3d 675 (*Johnson*), cited by Montebello, is distinguishable. In that case a company terminated an employee after a doctor to whom the company had referred him told the company that the employee had tested positive for barbiturates. The employee sued the company for interference with his contractual relations with the doctor, conspiring with the doctor to commit unprofessional conduct, and defamation, alleging that "the doctor had no right to disclose to the company the results of the blood test." (*Id.* at p. 678.) The employee did not exhaust the collective bargaining agreement's "specific, exclusive grievance and arbitration procedures to resolve disputes of this nature." (*Id.* at p. 679.) The court held

16

that, "[b]ecause the procedures established in the collective bargaining agreement were intended to be exclusive," the employee's "failure to exhaust those procedures precludes the present attempt to resort to the courts instead." (*Ibid.*)

*Johnson* was about exhaustion of a procedure in a collective bargaining agreement, not exhaustion of administrative remedies, which the court only mentioned in passing as "'analogous.'" (*Johnson*, *supra*, 70 Cal.App.3d at p. 679.) The court in *Johnson* emphasized that its decision was based on the "well established" rule that "a party to a collective bargaining contract which provides grievance and arbitration machinery for the settlement of disputes within the scope of such contract must exhaust the internal remedies before resorting to the courts in the absence of facts excusing such exhaustion." (*Ibid.*; see *Araiza v. National Steel and Shipbuilding Co.* (S.D. Cal. 1997) 973 F.Supp. 963, 969 ["[t]he dispute in *Johnson* concerned the interpretation and application of specific clauses of the collective bargaining agreement"].) Montebello does not provide any authority that *Johnson* applies outside the context of collective bargaining agreement, or for the proposition that the failure to exhaust administrative remedies with respect to the imposition of discipline precludes a defamation cause of action in these circumstances.[7]

---

[7] The other case cited by Montebello, *Joftes v. Kaufman* (D.D.C. 1971) 324 F.Supp. 660, also involved a grievance procedure under a collective bargaining agreement. The collective bargaining agreement authorized the employer to disclose the reasons for the plaintiff's discipline to persons with a legitimate interest. (*Id.* at pp. 662-663; see *Wallace v. Skadden, Arps, Slate, Meagher & Flom* (D.C. 1998) 715 A.2d 873, 880 [in *Joftes* "the contract in question provided for or contemplated the publication of the evaluations of which [the] plaintiff was complaining"].) Moreover, the holding of *Joftes* was that the communications were privileged. (See *Joftes*, at p. 663 ["[i]t is our conclusion that statements made either by representatives of management or by representatives of an employee at a conference or bargaining session having for its purpose the adjustment of a grievance of the employee or other peaceable disposition of such grievance are unqualifiedly privileged"].)

17

D.    *The Trial Court Erred in Granting Summary Adjudication of Issues*

In addition to granting Montebello's motion for summary judgment on the entire defamation cause of action, the trial court summarily adjudicated parts of the defamation cause of action in a manner that did not dispose of the entire cause of action. Montebello identified 11 separate allegedly defamatory statements, organized into categories of statements that city officials made to third parties, statements that city officials made to city employees, and statements that Bazua repeated to third parties. Montebello moved for summary adjudication as to each statement on different grounds, including that the statement was not defamatory, Bazua suffered no injury, there was no publication, the statements were protected by the common interest privilege, and governmental immunity. The trial court granted summary adjudication on four of the statements, concluding that one statement was true and that Montebello was not liable for Bazua's publication of three other statements.

Code of Civil Procedure section 437c, however, does not authorize such summary adjudication of issues; it allows the summary adjudication of an entire cause of action, an affirmative defense, a claim for damages, or an issue of duty. (See Code Civ. Proc., § 437c, subd. (f)(1) ["[a] motion for summary adjudication shall be granted only if it completely disposes of a cause of action"]; *McCaskey v. California State Auto. Assn.* (2010) 189 Cal.App.4th 947, 975 ["there can be no summary adjudication of less than an entire cause of action"]; *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 251 ["[s]ummary adjudication must completely dispose of the cause of action to which it is directed"].)[8] The trial court erred to the extent it granted summary adjudication of issues

---

[8]    At the time of Montebello's motion the only exception was former subdivision (s) of Code of Civil Procedure section 437c, which authorized a motion for "summary adjudication of a legal issue or a claim for damages other than punitive damages that does not completely dispose of a cause of action, an affirmative defense, or an issue of duty." (Stats. 2011, ch. 419, § 3.) Former subdivision (s) allowed such a motion only on a prior stipulation by the parties and a prior court order finding that the motion would further the interests of judicial economy or significantly improve the parties' ability to settle the

18

based on the various categories of defamatory statements created by Montebello for purposes of the motion.

## DISPOSITION

The judgment is reversed and remanded to the trial court with directions to vacate its order sustaining the demurrer to the cause of action for violation of Labor Code section 1102.5 without leave to amend, and to enter a new order overruling the demurrer and granting the motion to strike the PAGA claim. The trial court is also directed to vacate its order granting the motion for summary judgment and adjudication of issues on the defamation cause of action, and to enter a new order denying the motion. Bazua is to recover his costs on appeal.

SEGAL, J.

We concur:

PERLUSS, P. J.                                    ZELON, J.

---

case. There is no indication in the record that the parties ever filed such a stipulation or that the trial court made the required findings.

19